891 P.2d 877

COUNTRY WIDE TRUCK SERVICE,
Petitioner Employer, The Travelers
Insurance Co., Petitioner Carrier,

v.

The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,

Galen Walker, Respondent Employee,

SPECIAL FUND DIVISION, Respondent
Party in Interest.

No. 2 CA–IC 93–0034.

Court of Appeals of Arizona,
Division 2, Department A.

July 28, 1994.

Review Denied March 21, 1995.

Steven C. Lester, P.C. by Steven C. Lester, Phoenix, for petitioner employer and petitioner carrier.

Anita R. Valainis, Chief Counsel, Indust. Com'n of Arizona, Phoenix, for respondent.

Special Fund Div. by Laura L. McGrory, Phoenix, for respondent real party in interest.

*OPINION*

LIVERMORE, Presiding Judge.

In this workers' compensation case Country Wide Truck Service and its carrier, The Travelers Insurance Co., seek to set aside an Industrial Commission award denying apportionment. The pertinent facts are as follows.

Galen Walker has a long and complicated history of neck and back problems beginning in the early 1970s and including a spinal fusion and multiple cervical fusions. His problems were aggravated in 1987 when an industrial injury in Texas led to hospitalizations, nerve freezing procedures, and a 100 percent disability rating. While working for Country Wide Truck Service in June 1989, Walker again injured his neck and back when boxes he was unloading fell on him. Surgery was performed in September, and on November 8, he was released for light work. On November 27 he sustained an injury to his left shoulder.

Walker's claim for workers' compensation for this last injury was accepted and eventually closed with an unscheduled permanent impairment. The carrier requested a hearing to determine the amount of benefits due and whether apportionment pursuant to A.R.S. § 23–1065(C) was applicable. Prior

to hearing the parties stipulated to Walker's loss of earning capacity and to the fact that he had a preexisting non-industrial permanent impairment of greater than 10 percent. The only remaining issue was whether the carrier was entitled to apportionment pursuant to A.R.S. § 23–1065(C). The Special Fund having been joined as a party, hearings were held at the close of which the administrative law judge (ALJ) issued an award denying apportionment. The award was affirmed and supplemented upon administrative review and this request for special action review followed. For the reasons set forth below, we set aside the award.

■ Arizona's apportionment law was enacted to promote the hiring of handicapped workers by relieving the employer of increased compensation liability resulting from the combination of preexisting impairments and industrial injuries. *Salt River Project v. Industrial Commission,* 172 Ariz. 477, 482, 837 P.2d 1212, 1217 (App.1992); A. Larson, *Workmen's Compensation Law* § 59 (1992). Employers who meet the conditions of A.R.S. § 23–1065(C) are reimbursed from a second injury fund maintained by the Industrial Commission as the Special Fund and financed by a premium tax imposed on insurance carriers and self-insured employers. In pertinent part, A.R.S. § 23–1065(C) provides as follows:

In claims involving an employee who has a preexisting physical impairment which is not industrially-related and ... is of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed, and the impairment equals or exceeds a ten per cent permanent impairment ... and the employee thereafter suffers an additional permanent impairment not of the type specified in § 23–1044, subsection B, the claim involving the subsequent impairment is eligible for reimbursement, as provided by subsection D of this section, under the following conditions:

\*　\*　\*　\*　\*　\*

2. The employer establishes by written records that the employer had knowledge of the permanent impairment at the time the employee was hired, or that the employee continued in employment after the employer acquired such knowledge.

3. The employee's preexisting impairment is due to one or more of the following:

\*　\*　\*　\*　\*　\*

(y) Ruptured intervertebral disk.

In denying apportionment, the ALJ determined that Walker's impairment did not constitute a hindrance to his employment or reemployment because it never caused him to be denied a job nor prevented him from doing his pre-impairment job as a truck driver. Country Wide argues that this subjective approach defeats apportionment's purpose of providing employers an incentive to hire the handicapped. It urges instead adoption of a more objective approach which looks not to the particular individual's ability to maintain employment, but rather to the nature of the preexisting impairment and the likelihood that an employer would be less likely to hire someone with such an impairment than one without.

A matter of first impression in Arizona, this issue has been addressed by courts in other jurisdictions which, like ours, based their apportionment provisions on that of the Model Workmen's Compensation and Rehabilitation Law. *See Salt River Project,* 172 Ariz. at 480, 837 P.2d at 1215. We find particularly persuasive the reasoning of the Alaska Supreme Court in *Employers Commercial Union Insurance Group v. Christ,* 513 P.2d 1090, 1093 (Alaska 1973):

In interpreting the Alaska statute we must keep in mind the policy underlying second injury fund systems. It is recognized that a person, even though physically handicapped by injury or disease, should be given the opportunity to be self-supporting, thereby maintaining his independence and self-respect. One method of removing obstacles to the employment of the partially disabled is through a second injury fund. By making a logical and equitable adjustment of the liability assumed by the employer in hiring a handicapped person, the second injury fund removes or

at least decreases one barrier to employment. . . .

\*   \*   \*   \*   \*   \*

We think that by using a specific schedule of conditions which call for second injury fund payments the legislature intended to avoid the very type of litigation presented in this case. Nothing in the statute implies that there must be a case-by-case determination of the amount of hindrance to employment which flows from any scheduled pre-existing condition. If such an implication were to be drawn, it could seriously impede the functioning of the statutory scheme. If the statute is simply applied according to its terms, then employers and their insurance carriers may compute their potential liability, and the premiums to be paid for insurance coverage, in reliance on the statute. But if each case requires a finding that a scheduled condition had a particular detrimental effect on the employability of a given workman, then reliance on the statute is greatly diminished. The litigative uncertainties might well be reflected in higher insurance premiums, thereby defeating the underlying purpose of the act, which is to minimize the cost difference between employing handicapped persons and employing others.

\*   \*   \*   \*   \*   \*

It is argued that because the employee in this case was fully able to discharge his duties there is no practical reason to permit resort to the fund. But the statutory language provides the refutation. That language covers not only those physical impairments likely to be a hindrance or obstacle to obtaining employment, but also those which might be a hindrance in "obtaining reemployment if the employee should become unemployed." . . . Thus, even though Christ had no difficulty keeping his job with the Division of Lands, he might well have had difficulty finding another job in the event that he became unemployed.

It is highly likely that Walker's medical history would give pause to virtually any heavy labor employer, especially an employer of long-haul truckers whose duty it was in part to load or unload trucks. Even if an employer hired in spite of the medical history, it does not follow that one who is able to retain his current employment will be able, in the event he were to become unemployed, and if a subsequent employer were informed of his impairment, to obtain reemployment. Moreover, to view each case subjectively would be to defeat the statutory purpose. By hiring, an employer would demonstrate that the preexisting medical condition was not a hindrance to employment and thus would lose the right to claim apportionment. Only by denying employment could an employer establish hindrance but then not having employed the individual, no claim to apportionment could be made. We think the inquiry should be whether the impairment is such that an employer who knew of it and its extent would more likely than not significantly consider it when making a decision to hire or retain the employee. *See DeHaan v. Farmers Union Marketing and Processing Ass'n,* 302 Minn. 552, 225 N.W.2d 21 (1975). *See also Special Disability Trust Fund v. Martin Marietta Corporation,* 512 So.2d 1036 (Fla.App.1987); *Grounds v. Triple J Construction Co.,* 4 Kan.App.2d 325, 606 P.2d 484 (1980).

■ In the supplemental award the ALJ further found that Country Wide failed to establish "by written records" that it knew of Walker's preexisting permanent impairment at the time it hired him, or that Walker continued in its employment after it acquired such knowledge. The only written evidence consisted of a form entitled "Physician's Statement of Disability" signed by Country Wide's employee benefits representative on September 17, 1989, which, next to the question "Has patient ever had same or similar condition," contains a box checked "yes" and the words "Lumbar Lam.1973; Posterior Cervical Fusion 1982." We believe this sufficient to establish employer knowledge that Walker had a preexisting disabling condition. *See Kennecott Copper Corporation v. Chavez,* 111 N.M. 366, 370–71, 805 P.2d 633, 637–38 (App.1990) ("An employer is not required to know the medical specifics of an impairment, as long as knowledge of the impairment is present."), citing *Denton v. Sunflower Elec.*

*Co–Op,* 12 Kan.App.2d 262, 740 P.2d 98 (1987) (knowledge of low back problems lasting ten years is sufficient without knowing that the problems were caused by degenerative disc disease).  As Country Wide retained Walker in its employment after learning of his impairment via the above form, it has met the requirement of A.R.S. § 23–1065(C)(2).

The award of May 12, 1993, as supplemented on July 9, 1993, is set aside.

LACAGNINA and FERNANDEZ, JJ., concur.