939 P.2d 795

**SPECIAL FUND DIVISION, Petitioner,**

v.

**The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,**

**St. Charles Company, Respondent
Employer,**

**Liberty Mutual Insurance Group,
Respondent Carrier,**

**Wayne O. Burrell, Respondent Employee.**

**No. 1 CA–IC 95–0133.**

Court of Appeals of Arizona,
Division 1, Department A.

May 13, 1997.

Reconsideration Denied June 24, 1997.

Special Fund Division by Paula R. Eaton, Phoenix, for Petitioner.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for Respondent.

Cross & Lieberman, P.A. by Lawrence H. Lieberman, Phoenix, for Respondents Employer and Carrier.

Taylor & Associates by Richard E. Taylor, Phoenix, for Respondent Employee.

OPINION

NOYES, Judge.

This is a special action review of an Arizona Industrial Commission award and decision upon review for apportionment under Ariz.Rev.Stat.Ann. ("A.R.S.") section 23–1065(C) (1995). The issue is whether a written record stating "wounded in combat Nam" established the employer's knowledge that the worker had a "psychoneurotic disability following treatment in a recognized medical or mental institution" within the meaning of section 23–1065(C)(3)(n). Because we conclude that the written record is insufficient to establish that knowledge, we set aside the award and decision upon review.

**I.**

Respondent Employer ("St. Charles") manufactures kitchen cabinets. In May 1988 Respondent Employee ("Claimant") applied to work at St. Charles as a serviceman. He completed two written forms; one was an employment application and the other was an information form. On the application, Claimant wrote "no" in answer to the question, "Do you have any physical, mental, or emotional limitations which would limit your ability to perform the position applied for?" He also checked the box indicating that the lifting he could do was "Heavy (over 50 lbs)." Claimant wrote on the information form that

he was in the U.S. Army from 1969 to 1980 and that "yes" he did have a "service related disability." In explaining his "yes" answer, Claimant wrote four words: "wounded in combat Nam." St. Charles' human resources manager, Randal Dickason, interviewed Claimant and hired him.

Over four years later, in October 1992, Claimant had an industrial back injury followed by a workers' compensation claim and surgery. Respondent Carrier ("Liberty Mutual") closed the claim with permanent impairment and it then applied for relief from the Special Fund Division pursuant to the apportionment statute, A.R.S. section 23–1065(C). During the hearing process, Liberty Mutual submitted a 1986 Veteran's Administration ("VA") decision rating Claimant with a 30 percent disability for post-traumatic stress disorder ("PTSD"). This decision related that Claimant was in a helicopter crash in Vietnam in 1970 and was awarded the Purple Heart and other medals; that he had back surgery in 1983; that he was diagnosed with PTSD in 1984; and that his PTSD symptoms included sleep disturbance, withdrawal, and stinted social abilities. Although Claimant said he gave a copy of this decision to a supervisor at St. Charles, there was no copy of it in the St. Charles files.

The Special Fund Division stipulated that Claimant's PTSD was a preexisting psychoneurotic disability which equaled a ten percent permanent impairment and qualified for apportionment under A.R.S. section 23–1065(C)(3)(n). At the apportionment hearing, the only contested issue was whether Liberty Mutual could satisfy the "written records" requirement of A.R.S. section 23–1065(C)(2). This subsection adds the following essential element to an apportionment claim: "The employer establishes by written records that the employer had knowledge of the permanent impairment at the time the employee was hired, or that the employee continued in employment after the employer acquired such knowledge."

Liberty Mutual bases its apportionment claim solely on Claimant's PTSD and it does not claim that the VA decision satisfies the written records requirement. The relied-upon written record is the one containing the words "wounded in combat Nam." Liberty Mutual supplemented this written record with testimony. Claimant testified at the hearing that:

> I just didn't want to do inside work. The type of work I did was outside. I was alone probably 95 percent of the time and didn't have to deal with people.
>
> . . . .
>
> [I]f I get around four or five people, I start getting real nervous and edgy, and it's just—I'm better off out alone.

Claimant testified that he told his supervisors at St. Charles of his need to work outside and alone and they accommodated him.

Dickason testified that, before hiring Claimant, he asked him about "wounded in combat Nam" and learned about his helicopter crash and his bad back. Dickason said he accepted Claimant's statement that he could do the lifting required of a serviceman. When asked whether Claimant had said he could not work indoors because he had PTSD, Dickason ambiguously replied, "Yes. Well, I don't recall the exact words. I remember that he did not want to work in the high volume production environment in the kinds of deadlines that were required in the manufacturing plant."

The Administrative Law Judge ("ALJ") issued a decision which awarded apportionment on grounds that:

> Although the applicant's written records were not a model of clarity, the answers alerted the employer to the existence of the mental impairment. In spite of the impairment, the employer hired and retained the applicant and accommodated the post traumatic stress disorder.

The ALJ affirmed the award on administrative review. The Special Fund Division then brought this special action.

## II.

The Special Fund Division is jointly liable for cases of unscheduled disability compensation which meet all requirements specified in A.R.S. section 23–1065(C). *See* A.R.S. § 23–1065(C). The only issue in this case is

whether Liberty Mutual met the "written records" requirement of subsection (C)(2). This subsection has generated six recent opinions from this Court. Three opinions address the sufficiency of written records to meet the statutory requirement. *See Country Wide Truck Serv. v. Industrial Comm'n,* 181 Ariz. 410, 412–13, 891 P.2d 877, 879–80 (App.1994); *Special Fund Div. v. Industrial Comm'n (Morin),* 182 Ariz. 341, 346–47, 897 P.2d 643, 648–49 (App.1994); *Schuff Steel v. Industrial Comm'n,* 181 Ariz. 435, 445–46, 891 P.2d 902, 912–13 (App.1994). Two opinions interpret the statute's "continued in employment" language. *See Special Fund Div. v. Industrial Comm'n (Pete King),* 184 Ariz. 363, 365–68, 909 P.2d 430, 432–35 (App.1995); *Fremont Indem. Co. v. Industrial Comm'n,* 182 Ariz. 405, 408–09, 897 P.2d 707, 710–11 (App.1995). One opinion allowed the Special Fund Division to waive the written-records requirement by stipulating to the employer's knowledge of the employee's partially-amputated left leg. *Transporting Renewable Resources, Inc. v. Industrial Comm'n,* 185 Ariz. 543, 544–45, 917 P.2d 272, 273–74 (App.1996).

In *Country Wide,* the employer had a written record in which a doctor reported that the worker had a lumbar laminectomy and a posterior cervical fusion. The court concluded that this established the employer's knowledge that the worker had a "preexisting disabling condition" regarding his back and neck. 181 Ariz. at 412–13, 891 P.2d at 879–80. The court set aside an award denying apportionment. *Id.* at 413, 891 P.2d at 880.

In *Special Fund Div. (Morin),* the employer had a written record in which the worker reported that she had "knee problems," "knee surgery" and a "laminectomy." 182 Ariz. at 347, 897 P.2d at 649. The ALJ found that this established the employer's knowledge that the worker had a ruptured disc and degenerative joint disease. *Id.* This Court affirmed, stating "We believe that these are the type of injuries that permit an inference that [employer] knew of applicant's preexisting permanent impairment and decided to hire her despite the fact that she might have difficulty performing her tasks." *Id.*

We now come to cases which are more like the present one. In *Schuff Steel,* the ALJ found that written records referring to "cervical arthritis" did not establish the employer's knowledge of the worker's bilateral hand arthritis. 181 Ariz. at 445, 891 P.2d at 912. This Court affirmed an award denying apportionment and agreed with the ALJ that "the records establishing that Schuff Steel knew of Claimant's impairment from cervical arthritis do not establish that it knew of his impairment from bilateral hand arthritis." *Id.* The court also rejected an argument that the hearing transcript satisfied the written records requirement; the court found that such an argument "totally eviscerates the written records requirement." *Id.* at 446, 891 P.2d at 913.

In *Special Fund Div. (Pete King),* the employer obtained written records after the employee suffered an industrial injury. 184 Ariz. at 364, 909 P.2d at 431. This Court interpreted the "continued in employment" language in subsection 23–1065(C)(2) to refer to the period between the date of hire and the date of injury. *Id.* at 365–68, 909 P.2d at 432–35. The court in part reasoned that interpreting the requirement to apply to records obtained after the industrial injury "would render the statutory requirements pointless." *Id.* at 367, 909 P.2d at 434 (citing *Schuff Steel* ).

In *Fremont,* the employer had a written record establishing knowledge of the worker's hearing impairment but not her diabetes. 182 Ariz. at 407, 897 P.2d at 709. The carrier contended that the statute was satisfied by a written record of continued employment coupled with oral evidence that the employer knew of the diabetes. *Id.* at 407–08, 897 P.2d at 709–10. This Court rejected that argument, finding that it "trivializes the statutory written records requirement." *Id.* at 408–09, 897 P.2d at 710–11.

■ We publish this seventh opinion on the written records requirement to clarify dictum in *Schuff Steel,* which stated that, "[w]hether a general reference will satisfy the written records requirement will depend on the facts presented in each case." 181 Ariz. at 445, 891 P.2d at 912. This dictum should not be construed to allow testimonial

supplementation of written records. The facts in question are those contained in the written records. Section 23–1065(C)(2) requires that the ultimate fact—the employer's knowledge of the permanent impairment—be established by written records.

Liberty Mutual contends that oral evidence can explain a general written record and that "wounded in combat Nam" inspired Dickason to ask questions and to learn about Claimant's helicopter crash, his bad back and his PTSD. We conclude, however, that the only way "wounded in combat Nam" can be said to establish knowledge of "permanently impaired by PTSD" is to interpret the statute to allow apportionment if the employer establishes by written records its knowledge of *any* permanent impairment. We think that such an interpretation changes the meaning of the statute and is therefore an amendment which the legislature might enact but the court should not. The statute is clear as written. It requires that the employer establish by written records that it had knowledge of *the* permanent impairment on which the apportionment claim is based.

■ The written records in this case are like those in *Schuff Steel* and *Fremont;* they establish the employer's knowledge of an impairment other than the one on which the apportionment claim is based. We think it obvious that "wounded in combat Nam" is a general reference to a physical injury, that PTSD is a mental impairment, that there is no necessary connection between the two, and that many veterans have one without the other. We hold that "wounded in combat Nam" does not establish by written records the employer's knowledge that Claimant was permanently impaired by PTSD. " '[W]hether a particular inference can be drawn from the evidence is a question of law.' " *Bennett v. Industrial Comm'n,* 163 Ariz. 534, 538, 789 P.2d 401, 405 (App.1990) (quoting *Helton v. Industrial Comm'n,* 85 Ariz. 276, 280, 336 P.2d 852, 854 (1959)).

The award and decision upon review are set aside.

McGREGOR, J., concurs.

FIDEL, Judge, dissenting.

According to the majority, "[t]he issue is whether a written record stating 'wounded in combat Nam' established the employer's knowledge that the worker had a 'psychoneurotic disability following treatment in a recognized medical or mental institution.' " It does not, of course; the majority frames a question that answers itself. The written record does, however, establish the employer's knowledge that it was hiring an employee with a "service related disability" attributable to a combat wound in Viet Nam. Credible testimony further establishes that the claimant's written disclosure of this general disability led the employer to acquire more specific information at the time of hiring and to undertake to accommodate his limitations. This combination of written and oral evidence, grounded in a contemporaneous written record of general disability, is good enough in my opinion to satisfy the purposes of A.R.S. § 23–1065(C)(2).

This court has interpreted § 23–1065(C)(2) six times previously, and I agree with each of our past decisions. A record does not suffice which merely demonstrates employment and not that the employer knew of the employee's disability at the time. *Fremont,* 182 Ariz. at 408, 897 P.2d at 710. A record does not suffice which merely demonstrates knowledge of a different, non-qualifying disability. *Schuff Steel,* 181 Ariz. at 445, 891 P.2d at 912. A record does not suffice which merely demonstrates that the employer learned of the past disability after the present injury and not before. *Special Fund Div. (Pete King),* 184 Ariz. at 367–68, 909 P.2d at 434–35. A record *does* suffice which demonstrates that the employer knew of prior surgeries that may have left some degree of physical impairment—a lumbar laminectomy and cervical fusion in one case, a lumbar laminectomy and knee surgery in another— even though the record does not disclose that the employer knew of any actual disabilities or limitations attributable to those surgeries. *Country Wide,* 181 Ariz. at 412–13, 891 P.2d at 879–80; *Special Fund Div. (Morin),* 182 Ariz. at 347, 897 P.2d at 649. The statutory purpose is satisfied by the Special Fund's stipulation that the employer knew of a prior

disability (partial leg amputation) at the time of hiring, even though the employer lacks any contemporaneous writing that would satisfy the literal requirement of the statute. *Transporting*, 185 Ariz. at 544–45, 917 P.2d at 273–74.

These cases establish § 23–1065(C)(2) as a statute with the broad remedial purpose "to promote the hiring of handicapped workers by relieving the employer of increased compensation liability resulting from the combination of preexisting impairments and industrial injuries." *Country Wide*, 181 Ariz. at 411, 891 P.2d at 878; *see also Schuff Steel*, 181 Ariz. at 443, 891 P.2d at 910. They interpret the contemporaneous written record requirement as a device meant to restrict the benefits of apportionment to deserving employers and to prevent false or collusive apportionment claims. *See Transporting*, 185 Ariz. at 545, 917 P.2d at 274. Specifically, the written record assures that an employer seeking apportionment actually knew that it was hiring or retaining a handicapped worker and has not falsely claimed such knowledge after the fact. *Special Fund Div. (Pete King)*, 184 Ariz. at 366–67, 909 P.2d at 433–34. The writing requirement is merely evidentiary, however, and must be sensibly construed so as not to defeat the statute's larger remedial purpose. *See Transporting*, 185 Ariz. at 545, 917 P.2d at 274. Thus, the writing need not supply every detail. *See Country Wide*, 181 Ariz. at 412–13, 891 P.2d at 879–80; *Special Fund Div. (Morin)*, 182 Ariz. at 347, 897 P.2d at 649 (Industrial Commission may infer knowledge of residual impairment, though the written record is silent on that subject, when the written record demonstrates knowledge of prior spinal surgery). And the written record may be dispensed with altogether when the condition of impairment (an amputated limb) would so likely have been apparent that the Special Fund will stipulate that the employer had such knowledge. *Transporting*, 185 Ariz. at 545, 917 P.2d at 274.

This case presents a different question than those addressed before. Here, the employer has established by contemporaneous writing that it knew of the claimant's general disability at the time of hiring, but relies on oral evidence to prove that it inquired into the specifics of his condition. We have not previously encountered a case in which a contemporaneous written reflection of disability was alleged to be too general to satisfy the requirements of A.R.S. § 23–1065(C). In an anticipatory passage in *Schuff Steel*, however, we stated, "Whether a general reference will satisfy the written records requirement will depend on the facts presented in each case." 181 Ariz. at 445, 891 P.2d at 912. We now encounter such a case.

The majority comments that "wounded in combat Nam" refers to "a *physical* injury" and that there is "no necessary connection" between a combat wound and "a *mental* impairment" such as PTSD. I do not disagree. The writing in question, however, was not limited to "wounded in combat Nam." Rather, it disclosed a "service related *disability*" that the claimant attributed to being "wounded in combat Nam." When a combat wound results in disability, the disability may be physical, mental, or both. The specific form of claimant's disability was not revealed by his general written reference.

We therefore return to the question whether an employer may satisfy the written record requirement by presenting written proof that it knew of the claimant's general disability at the time of hiring, and may establish by supplemental oral evidence that it inquired about and undertook to accommodate the claimant's specific limitations. The majority answers this question in the negative, precluding any testimonial supplementation of written records. I find this restriction both unnecessary and unwise. Unnecessary because no such directive appears within the statute; it is purely a matter of judicial gloss. Unwise because experience—including the experience of appellate judging—teaches the futility of expecting writing to achieve a comprehensiveness and clarity that permit no supplement or explanation.

It is also self-defeating to engraft a specificity requirement onto the already suspect § 23–1065(C). That statute, we have acknowledged, clashes with The Americans With Disabilities Act of 1990, 42 United States Code (U.S.C.) §§ 12101–12213 (Supp. III 1991), which prohibits employers from

inquiring into disabilities of prospective employees. *Schuff Steel*, 181 Ariz. at 446, 891 P.2d at 913. We now require well-motivated employers not only to defy the Act but to document their violations with detailed specificity. Because employers will be reluctant to do so, we diminish any prospect that this remedial statute will achieve its goal; far from promoting hiring of the handicapped, we strangle that objective in red tape.

My colleagues suggest that they have no choice but to inflict these consequences on the law because the legislature has specified in § 23–1065(C) that the facts in an apportionment case are not those which might be developed with testimony; they are limited strictly to those which exist in the written records. I disagree. The legislature has specified that a candidate for apportionment must "establish[ ] by written records that the employer had knowledge of the permanent impairment." A.R.S. § 23–1065(C)(2). But the legislature has not specified that the candidate for apportionment must establish knowledge *solely* by written record, without recourse to testimonial supplementation or explanation. The majority simply chooses to read the statute in that way.

In contrast, although the legislature has not specified that the candidate for apportionment can establish knowledge by written record plus reasonable inference, the majority finds room for reasonable inference in the statute—and not just inescapable inference, but inferential choice. This court has twice permitted administrative law judges to infer knowledge of permanent impairment from written records, even though the records stated only that the employee had undergone past surgery and not whether the employee had emerged residually impaired. *See Country Wide*, 181 Ariz. at 412–13, 891 P.2d at 879–80; *Special Fund Div. (Morin)*, 182 Ariz. at 347, 897 P.2d at 649. The majority approves the substantial range of inferential choice permitted by these cases, as do I. Yet in § 23–1065(C) the legislature no more addresses the subject of inference from written records than it addresses testimonial supplement or explanation. The majority interprets reasonable inference into the statute, but interprets credible testimony out of

the statute. This is not a result that the legislature has decreed; it is simply an instance of judicial interpretive choice.

I would choose otherwise. To permit apportionment in this case would not trivialize the written record requirement or render it pointless. *See Fremont*, 182 Ariz. at 408–09, 897 P.2d at 710–11; *Special Fund Div. (Pete King)*, 184 Ariz. at 367, 909 P.2d at 434. To the contrary, this written record, general as it may be, suffices to allay any concern that this employer has falsely or collusively asserted prior knowledge; it shows that this employer knew when it hired the claimant that he had been wounded in Viet Nam and claimed an abiding resulting disability. Similarly, this written record, general as it may be, suffices to identify this employer as the sort the legislature meant to benefit from apportionment—one willing to take the kind of hiring risk described in *Special Fund Div. (Pete King):* "Before the industrial injury giving rise to the apportionment claim, an employer hiring or retaining a handicapped worker assumes increased risks that the worker will suffer a work-related injury or aggravated disability." 184 Ariz. at 366, 909 P.2d at 433. A contemporaneous record that satisfies these purposes ought to satisfy A.R.S. § 23–1065(C)(2). To the extent that further detail is necessary or desirable, the Industrial Commission ought to consider credible testimony toward that end.

The statute of frauds, like A.R.S. § 23–1065(C)(2), imposes a written record requirement to weed out fabricated claims. But under the statute of frauds, "The required writing need not contain all the material terms of the contract and such material terms as are stated need not be precisely stated. All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction." Uniform Commercial Code (U.C.C.) § 2–201, Official Comment One, quoted in *Koenen v. Royal Buick Co.*, 162 Ariz. 376, 380, 783 P.2d 822, 826 (App.1989). I would similarly construe the written record requirement of § 23–1065(C)(2).

Literal interpretation should not be carried to a point that "elevates form over substance," "frustrates the remedial purpose of

the statute," or accomplishes a result "such as cannot be contemplated the Legislature intended." *Transporting*, 185 Ariz. at 545, 917 P.2d at 274, (quoting *Garrison v. Luke*, 52 Ariz. 50, 56, 78 P.2d 1120, 1122 (1938)). By a combination of written record and supplemental testimony, this employer satisfied the administrative law judge that it knew of the applicant's mental impairment and, "[i]n spite of the impairment, [had] hired and retained the applicant and accommodated the post traumatic stress disorder." The administrative law judge who made this finding did justice both to the facts and to the law and advanced the purpose of A.R.S. § 23-1065(C)(2). I would affirm.