953 P.2d 541

**SPECIAL FUND DIVISION, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**St. Charles Company, Respondent Employer,**

**Liberty Mutual Insurance Group, Respondent Carrier,**

**Wayne O. Burrell, Respondent Employee.**

No. CV–97–0322–PR.

Supreme Court of Arizona, En Banc.

Feb. 17, 1998.

Industrial Commission of Arizona By Paula R. Eaton, Phoenix, for Special Fund Division.

Industrial Commission of Arizona By Anita R. Valainis, Phoenix, for Industrial Commission.

Cross & Lieberman, P.A. By Lawrence H. Lieberman, Lisa M. Ashbrook, Phoenix, for St. Charles Company and Liberty Mutual Insurance Group.

Taylor & Associates By Richard E. Taylor, Phoenix, for Wayne O. Burrell.

## OPINION

FELDMAN, Justice.

¶ 1. The court of appeals set aside an Industrial Commission award and decision for reimbursement under A.R.S. § 23–1065(C). *Special Fund Div. v. Industrial Comm'n (Burrell)*, 189 Ariz. 162, 939 P.2d 795 (App.1997). We granted review to clear up confusion in a number of court of appeals cases by deciding whether a written record establishing the existence of a pre-hiring disability, coupled with contemporaneous oral testimony regarding the nature of the disability, was sufficient to establish the employer's knowledge required under § 23–1065(C). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24; *see also* Rule 23(c)(3), Ariz.R.Civ.App.P.

## FACTS

¶ 2. In May 1988, Wayne O. Burrell ("Claimant") applied for a position as a serviceman with St. Charles Co., a manufacturer

of kitchen cabinets. On his Application for Employment, Claimant indicated he could lift over fifty pounds, did not suffer from any physical, mental, or emotional limitations that would limit his ability to lift, served in the U.S. Army from 1969–80, and had a "service related disability." In explanation of the disability, Claimant wrote "wounded in combat Nam." In a Pre–Employment Information Form, Claimant indicated he served in Vietnam, was a disabled veteran, and did not have any mental or physical handicaps.

¶ 3. St. Charles' human resources manager, Randal Dickason, interviewed Claimant, discussed the nature and extent of his disability, and hired him. At the hearing in this case, Claimant testified he informed Dickason at the interview that his service disability was post-traumatic stress disorder ("PTSD"), and as a result, he needed to work outside of the manufacturing plant and away from people. When asked whether he recalled a similar conversation with Claimant, Dickason replied, "Yes. Well, I don't recall the exact words. I remember that he did not want to work in the high volume production environment in the kinds of deadlines that were required in the manufacturing plant." Dickason testified that he learned about Claimant's helicopter crash while in military service and his bad back, but accepted Claimant's statement that he could do the lifting

required of a serviceman. Dickason stated that he learned Claimant had a service-related disability from the application form and his subsequent pre-employment discussion with Claimant.

¶ 4. In October 1992, Claimant sustained an industrial back injury at St. Charles and filed a workers' compensation claim. The carrier ("Liberty Mutual") closed the claim with permanent impairment and applied for reimbursement from the Special Fund Division ("Fund") for Claimant's preexisting PTSD pursuant to A.R.S. § 23–1065.[1] The Fund stipulated that Claimant's PTSD qualified for reimbursement under § 23–1065(C)(3)(n).[2] The only contested issue was whether Liberty Mutual could satisfy the "written records" requirement of § 23–1065(C)(2), which requires that the employer "establish[ ] by written records" that it had knowledge of the impairment when the employee was hired.

¶ 5. The administrative law judge awarded reimbursement, stating:

Although the applicant's written records were not a model of clarity, the answers alerted the employer to the existence of the mental impairment. In spite of the impairment, the employer hired and retained the applicant and accommodated the post traumatic stress disorder.

1. During the hearing process, Liberty Mutual submitted a 1986 Veterans Administration ("VA") decision rating Claimant with a 30 percent disability for PTSD. According to the decision, Claimant was in a helicopter crash in Vietnam in 1970; was awarded a Purple Heart and other medals; had back surgery in 1983; was diagnosed with PTSD in 1984; and his PTSD symptoms included sleep disturbance, withdrawal, and stunted social abilities. No evidence was presented to establish that a copy of the decision was on record in St. Charles' files.

2. A.R.S. § 23–1065(C) provides in pertinent part:
In claims involving an employee who has a preexisting physical impairment which is not industrially-related and, whether congenital or due to injury or disease, is of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed, and the impairment equals or exceeds a ten per cent permanent impairment evaluated in accordance with the American Medical Association guides to the evaluation of permanent impairment, and the employee thereafter suffers an

additional permanent impairment not of the type specified in § 23–1044, subsection B, the *claim involving the subsequent impairment is eligible for reimbursement,* as provided by subsection D of this section, *under the following conditions:*
1. The employer in whose employ the subsequent impairment occurred or its carrier is solely responsible for all temporary disability compensation to which the employee is entitled.
2. *The employer establishes by written records that the employer had knowledge of the permanent impairment at the time the employee was hired,* or that the employee continued in employment after the employer acquired such knowledge.
3. The employee's preexisting impairment is due to one or more of the following:
...
(n) Psychoneurotic disability following treatment in a recognized medical or mental institution.
(Emphasis added.)

The award was affirmed on administrative review, and the Fund brought a special action in the court of appeals.

¶ 6. The court of appeals set aside the award. The majority held that oral testimony acquired contemporaneously with written records of a disability cannot serve to satisfy the written records requirement to establish an employer's knowledge of a claimant's preexisting disability as required by § 23–1065(C)(2). *Special Fund Div. (Burrell),* 189 Ariz. at 162, 939 P.2d at 795. Thus the interview between Dickason and Claimant was irrelevant for purposes of determining whether § 23–1065(C) had been satisfied. The majority concluded that the written records only established "the employer's knowledge of an impairment other than the one on which the apportionment claim is based" and thus set aside the award. *Id.* at 165, 939 P.2d at 798.

¶ 7. Judge Fidel dissented, arguing that when a general reference to disability is provided in the written record, oral evidence demonstrating that the employer inquired and learned of the specific disability in question will satisfy § 23–1065(C)(2). He reasoned that the written record established the employer's knowledge of Claimant's general service-related disability and that the employer contemporaneously inquired and learned of Claimant's specific PTSD disability, thus satisfying § 23–1065(C)(2). *Id.* at 167, 939 P.2d at 800. (Fidel, J., dissenting).

## DISCUSSION

¶ 8. The underlying purpose of the Workers' Compensation Act is to compensate an employee for lost earning capacity and thus prevent the worker from becoming a public charge during periods of disability. *Mail Boxes v. Industrial Comm'n,* 181 Ariz. 119, 888 P.2d 777 (1995). Thus, in determining the amount of compensation to be awarded a disabled employee, consideration is given to preexisting injuries as well as the industrial incident. *See* § 23–1044(D). Compensation for the entirety of a worker's disability is intended to save a disabled worker from destitution that would result from being only partially compensated for total lost earning capacity. ARTHUR LARSON,

LARSON'S WORKER'S COMPENSATION LAW § 59.31(a) (1992). Therefore, an employer who hires an individual with preexisting injuries assumes the risk of compensating that employee for such preexisting injuries should the employee suffer an additional permanent physical impairment. *See* A.R.S. § 23–1065. Historically, this potential outcome resulted in severe employer discrimination toward disabled workers. Professor Larson explains that as "soon as it became clear that a particular state had adopted a rule requiring an employer to bear the full cost of total disability for loss of the crippled worker's remaining leg or arm, employers had a strong financial incentive to discharge all handicapped workers who might bring upon them this kind of aggravated liability." LARSON, *supra* § 59.31(a).

¶ 9. To remedy that situation, all states have adopted some form of second injury fund that ameliorates the employer's burden in such cases. *Id.; see also Special Fund Div. v. Industrial Comm'n (Morin),* 182 Ariz. 341, 345, 897 P.2d 643, 647 (App. 1994) (citing *State Compensation Fund v. Harris,* 26 Ariz.App. 9, 10, 545 P.2d 971, 972 (1976)). In Arizona, § 23–1065 provides that when certain requirements are met, the employer or insurance carrier and the Fund share liability for the injured employee's disability. § 23–1065(C)(4). Thus, § 23–1065 serves the important remedial purpose of promoting "the hiring of handicapped workers by relieving the employer of increased compensation liability resulting from the combination of preexisting impairments and industrial injuries." *Country Wide Truck Serv. v. Industrial Comm'n,* 181 Ariz. 410, 411, 891 P.2d 877, 878 (App.1994); *see also Schuff Steel Co. v. Industrial Comm'n,* 181 Ariz. 435, 443, 891 P.2d 902, 910 (App.1994). Generally, we construe remedial statutes liberally to achieve the special purpose underlying the legislation. *E.g., Royall v. Industrial Comm'n,* 106 Ariz. 346, 348, 476 P.2d 156, 158 (1970).

¶ 10. One of the prerequisites for an employer to be reimbursed by the Fund is that the "employer establish[ ] by written records that the employer had knowledge of

the permanent impairment at the time the employee was hired...." § 23–1065(C)(2). The fundamental purpose of the written records requirement is to condition the Fund's liability in conformity with the remedial purpose of the legislation. Since the rationale behind the legislation is to negate the impact of the prior injury on the employer's hiring or retention decision, the written records requirement extends Fund liability only to those cases in which the employer was aware of the injury. *See, e.g., Country Wide,* 181 Ariz. at 412, 891 P.2d at 879 ("the inquiry should be whether the impairment is such that an employer who knew of it and its extent would more likely than not significantly consider it when making a decision to hire or retain the employee."). Our court of appeals has also observed that the written records requirement serves the purposes of protecting against spurious or collusive claims on the one hand and obviating the necessity of litigating whether the employer had such knowledge on the other hand. *Transporting Renewable Resources, Inc. v. Industrial Comm'n,* 185 Ariz. 543, 917 P.2d 272 (App. 1996). However, we emphasize that the "writing requirement is *merely evidentiary,* and must be sensibly construed so as not to defeat the statute's larger remedial purpose." *Special Fund (Burrell),* 189 Ariz. at 165, 939 P.2d at 798 (Fidel, J., dissenting) (emphasis added) (citations omitted). The larger purpose, of course, is to promote the hiring of disabled or handicapped workers. We therefore interpret the statute in the manner that best carries out the legislative purpose. *E.g., Ohlmaier v. Industrial Comm'n,* 161 Ariz. 113, 115, 776 P.2d 791, 793 (1989).

¶ 11. While this case is the first occasion we have had to interpret § 23–1065(C), the court of appeals has considered the written records requirement a number of times. We briefly review those decisions here as they illustrate that in light of the Fund's basic purpose, the proper inquiry pertains to the employer's pre-employment knowledge of the specific preexisting injury, and a written record is only an evidentiary condition. In *Fremont Indemnity Co. v. Industrial Commission,* for example, the court held that a written record that merely demonstrates employment without mention of the employer's

knowledge of the employee's disability is insufficient. 182 Ariz. 405, 408, 897 P.2d 707, 710 (App.1995). In *Schuff Steel,* the court held that a written record that demonstrates the employer's knowledge of a different, non-qualifying disability is insufficient. 181 Ariz. at 445, 891 P.2d at 912. In another case, the court held that a written record demonstrating that the employer learned of the past disability only after the industrial injury occurred is insufficient. *Special Fund Div. v. Industrial Comm'n (Pete King Corp.),* 184 Ariz. 363, 367–68, 909 P.2d 430, 434–35 (App. 1995). We observe that none of these cases presents the situation in which the employer clearly knew of the relevant disability at the time of making the hiring or retention decision. Absent the Fund's existence, this, of course, is the time when the prior disability would provide a financial incentive to discriminate against the employee. Thus, each of those cases held the written records requirement was not satisfied.

¶ 12. On the other hand, the court of appeals has held that a record does suffice when it demonstrates that the employer knew of an employee's prior surgery that may have left some degree of physical impairment even though the record did not disclose that the employer knew of the actual disability or limitation attributable to the surgery. *Special Fund Div. (Morin),* 182 Ariz. at 347, 897 P.2d at 649; *Country Wide,* 181 Ariz. at 412–13, 891 P.2d at 879–80. Despite the absence of written evidence of the employer's knowledge of a specific disability, the records in these cases were enough to put an employer on notice of potential prior injury and, absent the Fund's existence, would have provided a financial incentive to not hire the employee. Thus the court in *Special Fund Div. (Morin)* reasoned that the employer had knowledge of the applicant's impairment because the general injury references in the written record were "the type of injuries that permit an *inference* that [the] employer knew of applicant's preexisting impairment *and decided to hire her despite the fact that she might have difficulty in performing her tasks ... and presented some potential for reinjury."* 182

Ariz. at 347, 897 P.2d at 649 (emphasis added).

¶ 13. The clearest example that the written records requirement is only evidentiary in nature and the employer's knowledge controls is *Transporting Renewable Resources,* in which the court of appeals held that the written records requirement was satisfied by stipulation even though *there had been no written record at all.* 185 Ariz. at 544–45, 917 P.2d at 273–74. The court found the statutory purpose of employer knowledge satisfied because the Fund stipulated that the employer knew of the prior disability at the time of hiring. The court of appeals went so far as to state that "the Special Fund *should* stipulate when, as here, the employer's knowledge cannot be reasonably doubted." *Id.* at 545, 917 P.2d at 274 (emphasis added). The court grounded its analysis in the remedial purpose of the law, reasoning that although the statute "literally requires a written record in every case, a literal interpretation elevates form over substance and frustrates the remedial purpose of the statute. Literal interpretation, in short, leads to a result 'such as cannot be contemplated the Legislature intended....'" *Id.* (quoting *Garrison v. Luke,* 52 Ariz. 50, 56, 78 P.2d 1120, 1122 (1938)).[3]

▮ ¶ 14. Without commenting on the propriety of the court's ultimate conclusion on the facts in *Transporting Renewable Resources,* we note that in the present case, the Fund contends that testimony about a verbal inquiry made contemporaneously with the written record cannot be used to establish the employer's knowledge of the prior injury. The Fund submits that the plain language of the statute compels that result, and the court of appeals reasoned that any change ought to be left to the legislature. *See Special Fund Div. (Burrell),* 189 Ariz. at 165, 939 P.2d at 798. We disagree. While the statute does not expressly permit testimonial supplementation of written records, neither does it expressly prohibit such evidence. Nowhere does the text of the statute require that an employer's knowledge be established exclusively by written records. The statute clearly establishes legislative policy—to encour-

age the hiring of handicapped and disabled employees. We are left to interpret and apply the statute.

¶ 15. Given the liberal construction appropriate for this remedial statute, the general purpose of the Fund, and the specific but narrow purpose of the written records requirement, we believe the Fund's interpretation of the statute is too restrictive. The blanket exclusion of testimonial supplementation tends to impair the statutory purpose of the Fund. When, upon receiving written but general notice of an employee's preexisting injury, an employer contemporaneously seeks verbal explanation and learns of the relevant prior injury or disability, it has a strong financial disincentive to hire. The Fund's existence as a source of compensation removes that disincentive. The court of appeals' holding imposes a rigid "no testimonial supplementation" rule that strengthens the disincentive the legislature sought to remove. Employers, especially small business firms, will often short-cut the descriptions required by forms produced by governmental bureaucracy. Insofar as possible, the statutory requirements should be interpreted to further the legislative policy and in a manner comporting with the realities of business practice.

¶ 16. We note that several other jurisdictions with similar written records requirements have reached substantially the same result. *See, e.g., Gilbane Co. v. Poulas,* 576 A.2d 1195, 1196 (R.I.1990) (written records requirement only requires that the employer have knowledge at time of hire, and cannot be construed to require written records at time of hire); *U.S. Pipe & Foundry Co. v. Caraway,* 546 S.W.2d 215 (Tenn.1977) (written records requirement satisfied when records corroborate personnel director's oral testimony that employer was aware of handicaps).

¶ 17. Moreover, the specific purposes of the written records requirement do not necessitate a per se rule. As noted, the written records requirement protects against spurious or collusive claims and obviates the necessity of litigating whether the employer

---

3. Neither party sought review by this court.

had such knowledge. *See, e.g., Transporting Renewable Resources,* 185 Ariz. 543, 917 P.2d 272. Credible testimony, offered in conjunction with written indicia, may establish the employer's knowledge as well as written records. And permitting testimonial supplementation that conclusively explains general written references to disabilities or injures will not, we think, seriously increase litigation. The only purpose of the written records requirement that even arguably supports a per se exclusion of testimonial supplementation is that of preventing "spurious or collusive claims." *Id.* We think, however, that the complete foreclosure of testimonial supplementation is more medicine than the patient needs. We doubt that employee and employer will often collude to implicate the Fund. Further, our administrative law judges are more than capable of weighing the credibility of testimony and evaluating whether the employer has met its burden of demonstrating that it possessed the requisite knowledge at the requisite time.

¶ 18. Having determined that oral testimony may supplement written records to satisfy § 23–1065(C)(2), the question remains whether the written record and oral testimony in this case were sufficient. The writing in question disclosed that Claimant had a service-related disability attributable to being wounded in Vietnam. A disability may be physical, mental, or both. While the employer was apprised of Claimant's general disability by the written record, supplemental oral evidence provided knowledge of Claimant's specific limitations. The employer's knowledge of Claimant's specific disability was "establish[ed] by supplemental oral evidence that [the employer] inquired about and undertook to accommodate the claimant's specific limitations." *Special Fund Div. (Burrell),* 189 Ariz. at 166, 939 P.2d at 799. This quantum of proof satisfied the written records requirement of § 23–1065(C)(2).

## CONCLUSION

¶ 19. We hold that the written records requirement may be satisfied by contemporaneous testimonial explanation of general written references to a disability. Accordingly, we vacate the court of appeals' opinion and reinstate the administrative law judge's award.

ZLAKET, C.J., JONES, V.C.J., and JAMES MOELLER, (Retired), and MARTONE, JJ., concur.