NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

ICA SPECIAL FUND DIVISION, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

NELSON REY, *Respondent Employee*,

NORTHERN ARIZ. HEALTHCARE, *Respondent Employer*,

COPPERPOINT PREMIER INSURANCE CO., *Respondent Carrier*.

No. 1 CA-IC 22-0040
FILED 01-23-2025

Special Action - Industrial Commission
ICA Claim No. 20153000098
Carrier Claim No. 15P00223
The Honorable Amy L. Foster, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Norton & Brozina PC, Phoenix
By Kevin E. Karges
*Counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent ICA*

CopperPoint Insurance Company, Phoenix
By Chiko F. Swiney
*Counsel for Respondent Employer and Insurance Carrier*

Snow Carpio & Weekley, PLC, Phoenix
By Xavier A. Carpio
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Jennifer B. Campbell joined.

---

**C A T T A N I**, Judge:

**¶1**        The Special Fund Division ("Special Fund") of the Industrial Commission of Arizona ("ICA") challenges an award finding Nelson Rey's 2015 workers' compensation claim eligible for apportionment under A.R.S. § 23-1065(B)(2).  There is no dispute that Rey is entitled to compensation for permanent partial disability stemming from his work injuries.  The only issue here is whether respondent employer Northern Arizona Healthcare and respondent carrier CopperPoint Premier Insurance Co. (collectively, "CopperPoint") are entitled to partial reimbursement from the Special Fund for their payment of those disability benefits.  *See* A.R.S. § 23-1065(B)(2).  For reasons that follow, we affirm the award.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**        In 2003, Rey suffered an industrial injury to his right elbow while working for Northern Arizona Healthcare.  His resulting workers' compensation claim was accepted for benefits and closed in 2005 with a "scheduled" 10% permanent impairment to his right upper extremity.[1]  *See infra* ¶ 12.

**¶3**        In 2015, Rey injured his right foot and ankle while working for the same employer.  His workers' compensation claim for this new injury was accepted for benefits, and he underwent surgery.  CopperPoint

---

[1]        A "scheduled" impairment is one to a body part listed in A.R.S. § 23-1044(B).

initially closed this claim in 2017. The injury resulted in a new scheduled permanent impairment (this time to Rey's lower right extremity), so Rey's claim for permanent partial disability benefits was to be compensated based on loss of earning capacity in light of his now-overall-"unscheduled" impairment. *See infra* ¶ 13.

¶4 Given this combination (a preexisting scheduled impairment from the 2003 injury and an additional scheduled impairment from the 2015 injury), CopperPoint's request for "apportionment" (that is, partial reimbursement from the Special Fund) was accepted. *See infra* ¶¶ 14–15. The ICA concurrently determined that Rey had not suffered any loss of earning capacity, which meant Rey received a vocational rehabilitation bonus but no ongoing disability benefits subject to reimbursement. *Compare* A.R.S. § 23-1065(B)(1), *with* A.R.S. § 23-1065(B)(2).

¶5 Meanwhile, however, Rey requested and CopperPoint agreed to reopen the 2015 ankle claim for active treatment. While recovering from a second ankle surgery, Rey developed an injury to his right elbow from using crutches. This elbow injury was later determined to be causally related to the industrial ankle injury and thus compensable. Once Rey's ankle and elbow no longer needed active treatment, CopperPoint closed the reopened claim, acknowledging that it resulted in permanent impairment.

¶6 Although Rey challenged the closure, an administrative law judge ("ALJ") found his condition stationary with permanent impairment. Rey's treating physician had noted a 5% impairment to his upper right extremity (less than the 10% impairment rating attributable to his 2003 injury). The independent medical examiner assessing Rey's condition agreed that Rey's elbow had a permanent impairment, but that it did not increase the impairment level beyond the existing 10% impairment from Rey's 2003 injury. The ALJ noted this testimony that Rey would have had a 5% impairment "had this been a new condition" but that there was no further elbow impairment "beyond what [Rey] received in the past." Nevertheless, based on the parties' stipulation that Rey's disability benefits would be determined based on loss of earning capacity as an overall-unscheduled impairment, the ALJ did not separately determine an impairment rating for Rey's elbow.

¶7 After this reclosure, the ICA issued an award for permanent partial disability finding no loss of earning capacity resulting from the 2015 injury. Rey challenged this determination, and during the prehearing process, CopperPoint requested apportionment under A.R.S. § 23-1065(B) and asked that the Special Fund be joined as an interested party.

¶8        The Special Fund was joined as a party to the proceedings in January 2022 and immediately moved for dismissal, asserting that Rey's 2015 claim had ultimately been reclosed as an unscheduled impairment that did not meet the statutory requirements for apportionment.  CopperPoint opposed.  By the time of the hearing in June 2022, the parties had settled the issue of loss of earning capacity and the only point in dispute was whether the claim was eligible for apportionment.  CopperPoint and the Special Fund submitted that issue to the ALJ on the existing record.

¶9        The ALJ ultimately ruled that Rey's 2015 claim was eligible for apportionment under § 23-1065(B)(2).  The ALJ reasoned that Rey's "pre-existing industrially-related ten percent impairment to the right upper extremity" from the 2003 claim combined with the additional impairment to his right lower extremity from the 2015 injury to "make[] the [2015] claim unscheduled and eligible for apportionment."  The ALJ noted that apportionment had been granted before the 2015 claim was reopened.  The ALJ specifically reiterated the independent medical examiner's testimony during reclosure "that [Rey's] elbow had a permanent impairment, but that it did not increase the impairment beyond the ten percent impairment from the 2003 claim," then concluded that the reopening and reclosure of the 2015 claim "does not mean that the claim becomes unscheduled or that apportionment no longer attaches."

¶10        The Special Fund sought administrative review, and the ALJ affirmed the award.  This statutory special action followed.  We have jurisdiction under A.R.S. §§ 12-120.21(A)(2), 23-951(A), and RPSA 21(b).

## DISCUSSION

¶11        The core issue on appeal is whether the ALJ erred by finding that Rey's 2015 claim was eligible for apportionment and thus awarding CopperPoint partial reimbursement from the Special Fund for payment of permanent partial disability benefits. *See* A.R.S. § 23-1065(B)(2).  On review, we defer to the ALJ's factual findings but independently review issues of law. *Special Fund Div. v. Indus. Comm'n (Sordia)*, 224 Ariz. 29, 31, ¶ 7 (App. 2010).

¶12        Arizona's workers' compensation system provides compensation for a claimant who suffers a permanent partial disability resulting from an industrial injury. *See generally* A.R.S. §§ 23-1044, -1047.  Broadly speaking, the governing statute—A.R.S. § 23-1044—divides compensation for permanent partial disabilities into two categories.  First, disability caused by "scheduled" injuries—those delineated in subsection

(B)—is compensated at a fixed amount for the definite period listed in the statute. *See* A.R.S. § 23-1044(B); *see also Ossic v. Verde Cent. Mines*, 46 Ariz. 176, 187 (1935). For example, the statute fixes compensation for permanent partial disability caused by "loss of a thumb" at the rate of 55% of the claimant's average monthly wage for a period of 15 months, whereas compensation is paid at the same rate for a period of 50 months for "loss of a leg." A.R.S. § 23-1044(B)(1), (15).

**¶13** For a permanent partial disability caused by an "unscheduled" injury—that is, any injury *not* listed in subsection (B)—compensation is calculated based on the claimant's resulting loss of earning capacity and is paid as long as the disability exists. A.R.S. § 23-1044(C); *see also Ossic*, 46 Ariz. at 187–88. This category includes disability caused by injury or impairment to a body part that is not enumerated in subsection (B) (e.g., a spinal injury) as well as disability stemming from a combination of two or more otherwise-scheduled injuries, whether suffered simultaneously or in sequence. *See* A.R.S. § 23-1044(C), (E); *Ossic*, 46 Ariz. at 188–90; *Alsbrooks v. Indus. Comm'n*, 118 Ariz. 480, 482–83 (1978).

**¶14** The claimant's employer at the time of an injury is generally responsible for the full amount of compensation for any resulting disability. *See Special Fund Div. v. Indus. Comm'n (Burrell)*, 191 Ariz. 149, 152, ¶ 8 (1998). But to promote hiring and continued employment of workers with preexisting conditions, our Legislature established the Special Fund as a "second injury fund" to share the cost of certain disability compensation. *See id.* at ¶¶ 8–9; *see also* A.R.S. § 23-1065. Thus, in statutorily defined circumstances, the Special Fund is liable to reimburse the employer or carrier for 50% of a portion of the disability compensation paid to a permanently disabled worker. A.R.S. § 23-1065(B)(2), (C)(4), (E).

**¶15** The provision implicated here makes reimbursement (also known as "apportionment") available when a worker experiences two scheduled impairments in sequence:

> In claims involving an employee who has a preexisting industrially-related permanent physical impairment of the type specified in § 23-1044, subsection B [i.e., a scheduled injury] and who thereafter suffers an additional permanent physical impairment of the type specified in such subsection [i.e., a second scheduled injury], the claim involving the subsequent impairment is eligible for reimbursement . . . .

A.R.S. § 23-1065(B). Thus, when a worker who has already suffered one scheduled injury ("a preexisting industrially-related permanent physical impairment of the type specified in § 23-1044, subsection B") subsequently suffers a second scheduled injury causing additional permanent impairment ("an additional permanent physical impairment of the type specified in such subsection"), the latter claim qualifies for reimbursement. That reimbursement is paid as outlined in § 23-1065(B)(1) and (2).

¶16        Here, the Special Fund does not dispute that, at the time of his 2015 industrial injury, Rey had a preexisting industrial impairment to his elbow, a scheduled body part, from 2003. *See* A.R.S. § 23-1044(B)(13), (21). Nor does the Special Fund dispute that Rey's 2015 injury resulted in permanent impairment to his ankle, an additional scheduled body part, *see* A.R.S. § 23-1044(B)(14), (21), which made apportionment available under § 23-1065(B)—at least before the 2015 claim was reopened.

¶17        Instead, the Special Fund asserts that *after* reopening, apportionment under § 23-1065(B) was improper because the 2015 claim involved a new injury to Rey's right elbow as well as his ankle, which resulted in an unscheduled impairment—independently compensable based on loss of earning capacity under § 23-1044(C), not (B), without regard to Rey's preexisting impairment. The Special Fund asserts that the reclosure award determined as much and was entitled to preclusive effect, and that the ALJ rendering the apportionment award improperly relied on the initial closure rather than the reclosure as binding.

¶18        Apportionment is proper under § 23-1065(B) when a claimant with a preexisting scheduled impairment suffers an "additional" impairment of the type specified in § 23-1044(B). And here, the only "additional" impairment resulting from Rey's 2015 injury—even after reopening—was to his ankle. Citing medical evidence from the reclosure proceedings, the Special Fund asserts that, if Rey had "not had any pre-existing impairments," his new elbow injury "would have" resulted in a 5% impairment. But Rey *did* have a preexisting 10% impairment to his right elbow from the 2003 injury, meaning the 2015 claim left him with no *additional* impairment to his upper right extremity beyond that preexisting impairment.

¶19        The Special Fund asserts that the reclosure award determined otherwise, and that the ALJ here wrongly relied on circumstances existing at the initial closure rather than reclosure of the 2015 claim. But while the reclosure proceedings addressed whether the 2015 injury resulted in permanent physical impairment, whether any such impairment was

"additional" to Rey's preexisting condition was neither litigated nor decided.[2] To the extent the reclosure award touched on the issue at all, the ALJ's factual findings recited the independent medical examiner's testimony that Rey's elbow "does not meet criteria for impairment beyond what he was previously assessed"—i.e., that Rey had suffered no additional elbow impairment. And although the decision cited § 23-1044(C) when referring the matter for calculation of disability benefits, that provision governs the relevant calculation (loss of earning capacity) regardless whether apportionment applies. *See* A.R.S. § 23-1065(B)(2) (describing procedure for reimbursement when the ICA "determines that the employee is entitled to compensation for loss of earning capacity under § 23-1044, subsection C").

**¶20**        Moreover, the ALJ noted and considered the circumstances at reclosing, expressly citing the independent medical examiner's testimony during the reclosure hearing that Rey's new elbow injury "did not increase the impairment beyond the ten percent impairment from the 2003 claim." Because the reopening did not result in any additional impairment, however, the ALJ correctly reasoned that the reopening and reclosure did not affect eligibility for apportionment. Accordingly, because the only additional permanent physical impairment from the 2015 injury was to Rey's ankle, a scheduled body part, the 2015 claim qualifies for reimbursement under A.R.S. § 23-1065(B). *See Universal Roofers v. Indus. Comm'n*, 187 Ariz. 620, 622 (App. 1996) (noting that eligibility for apportionment hinges on "the nature of the impairment, not [] the nature of the disability compensation").

---

[2]        For the first time on appeal, the Special Fund argues that CopperPoint failed to timely provide notice of its claim for apportionment, which excluded the Special Fund from the reclosure proceedings. Although CopperPoint did not provide notice when reclosing the 2015 claim, *see* A.R.S. § 23-1065(D), it did so when Rey challenged the ICA's calculation of permanent partial disability benefits. Even assuming this was untimely, that does not necessarily bar a request for apportionment. *See Special Fund Div. v. Indus. Comm'n (Morin)*, 182 Ariz. 341, 344–45 (App. 1994). And after receiving notice, the Special Fund did not seek (even in the alternative) to unwind and participate in reclosure proceedings, but rather opted to oppose apportionment on the existing record. Because we do not consider issues that were not raised before the ICA, *see Stephens v. Indus. Comm'n*, 114 Ariz. 92, 94 (App. 1977), we decline to further address this argument.

**¶21** Finally, the Special Fund argues in the alternative that the apportionment award should be vacated for want of adequate findings or reasoning. *See Post v. Indus. Comm'n*, 160 Ariz. 4, 7–9 (1989) (requiring the ALJ to make necessary factual findings, resolve conflicts in the evidence, and provide a basis for a reviewing court to evaluate its legal analysis). Here, there was no new evidence presented necessitating credibility determinations or new factual findings, and the award adequately explained the ALJ's legal reasoning. We thus decline to vacate the award on this basis.

## CONCLUSION

**¶22** We affirm the award.



AMY M. WOOD • Clerk of the Court
FILED:         JR