909 P.2d 430

**SPECIAL FUND DIVISION, Petitioner,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Pete King Corporation, Respondent Employer,**

**Argonaut Insurance Co., Respondent Carrier.**

**No. 1 CA–IC 93–0174.**

Court of Appeals of Arizona, Division 1, Department C.

July 3, 1995.

Reconsideration Denied Aug. 4, 1995.

Review Denied Jan. 17, 1996.*

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

The Industrial Com'n of Ariz., Special Fund Div. by Laura L. McGrory, Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, The Industrial Com'n of Ariz., Phoenix, for respondent.

Steven C. Lester, P.C. by Steven C. Lester, Phoenix, for respondents Employer and Carrier.

## OPINION

McGREGOR, Judge.

This is a special action review of an Arizona Industrial Commission Decision Upon Review granting apportionment under Ariz. Rev.Stat.Ann. ("A.R.S.") section 23–1065.C between Respondent Carrier Argonaut Insurance Co. (Argonaut) and the Special Fund Division (petitioner).[1] The primary issue is whether an employer who acquires knowledge of an employee's non-industrial, preexisting physical impairment *after* the date of the industrial injury is entitled to reimbursement from the Special Fund Division. We conclude knowledge acquired after the date of industrial injury does not satisfy the requirement of section 23–1065.C.2 and set aside the decision upon review.

1. The decision upon review also approved a settlement agreement, which provided that claimant would accept a no loss award in exchange for a payment of $50,000. Petitioner approved this settlement and agreed to pay Argonaut $25,000 if it is entitled to apportionment.

### I.

On December 2, 1986, Respondent Employee Sam Sandoval (claimant) injured his lower back while working for Respondent Employer Pete King Corporation (Pete King). Claimant filed a claim for workers' compensation benefits, which Argonaut, as Pete King's insurer, accepted. Pete King continued to employ claimant after this industrial injury. At the end of 1987, claimant returned to work on a part-time basis and, in early 1988, returned to work full-time. He continued to work for Pete King until he retired on February 28, 1989.

While processing claimant's industrial injury claim during his period of continued employment after the December 2 injury, Argonaut acquired documents allegedly sufficient to establish its knowledge of claimant's preexisting hand and wrist arthritis.[2] The administrative law judge ultimately agreed that documents acquired by the date-of-injury employer after the industrial injury and during continued employment satisfy the requirements of A.R.S. section 23–1065. Petitioner then brought this special action to challenge the administrative law judge's interpretation of section 23–1065.C.2.

### II.

For cases involving an employee with a non-industrial preexisting physical impairment, A.R.S. section 23–1065 establishes a special fund to provide reimbursement for claims against the employer (or its insurance carrier) for an industrial injury. The legislature enacted this apportionment law "to promote the hiring of handicapped workers by relieving the employer of increased compensation liability resulting from the combination of preexisting impairments and industrial injuries." *Country Wide Truck Service v. Industrial Comm'n*, 181 Ariz. 410, 410, 891 P.2d 877, 877 (App.1994).

2. Argonaut and petitioner dispute whether knowledge acquired by an insurance carrier can be imputed to an employer for purposes of fulfilling the written records requirement of A.R.S. section 23–1065.C. Given our resolution of the dispositive issue in this matter, we do not reach that issue.

Section 23–1065.C establishes a number of conditions that must be met before a claim is apportioned between the special fund and the employer. All parties agree that the facts of this action meet most conditions of the statute: petitioner stipulated that claimant suffered bilateral hand and wrist arthritis before the industrial injury, that this arthritis caused a permanent impairment rating ten percent or greater under the American Medical Association Guides, and that it constituted a hindrance or obstacle to employment or to reemployment. *See* A.R.S. § 23–1065.C.

The dispute between Argonaut and petitioner is whether the employer presented proof "by written records that the employer had knowledge of the permanent impairment at the time the employee was hired, or that the employee continued in employment after the employer acquired such knowledge," as required by section 23–1065.C.2.[3]

### A.

▪ Statutory interpretation is a question of law, which we review *de novo*. *Parker v. Vanell*, 170 Ariz. 350, 351, 824 P.2d 746, 747 (1992). Our goal in interpreting statutes is to give effect to the legislative intent. *State Compensation Fund v. Nelson*, 153 Ariz. 450, 453, 737 P.2d 1088, 1091 (1987). The language of the statute provides the primary evidence of legislative intent. *Id.* We also infer intent from the purpose of a statute. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 575, 521 P.2d 1119, 1121 (1974).

▪ The written records requirement of section 23–1065.C serves two purposes:

First, it helps to ensure that Fund reimbursement furthers the statutory purpose by providing evidence that the employer actually knew of the employee's preexisting impairment; it protects the Fund against spurious or collusive claims. Second, it obviates the necessity of litigating

the question of whether the employer had knowledge of the preexisting condition.
*Sea–Land Services, Inc. v. Second Injury Fund*, 737 P.2d 793, 795 (Alaska 1987) (citations omitted).

Section 23–1065.C.2 requires a written record of a permanent impairment under either of two conditions. The first requires the employer to have a written record of the employee's permanent impairment "at the time the employee was hired." This condition can refer only to the period before the industrial injury: a worker presumably cannot sustain a compensable injury until the employer hires him. *See* 1A Arthur Larson, *The Law of Workmen's Compensation* § 26.21 (1994). The alternative condition requires that written records establish "that the employee continued in employment after the employer acquired such knowledge." Contrary to Argonaut's assertion that the statutory language unambiguously applies both to pre-injury and to post-injury knowledge, we conclude that the statutory language itself does not disclose whether the legislature intended to include only knowledge acquired before the industrial injury or whether the legislature also intended to include knowledge acquired after the industrial injury.

To support its argument that we should afford the statutory language a broad interpretation, Argonaut cites *Lasiter v. Industrial Comm'n*, 173 Ariz. 56, 839 P.2d 1101 (1992). In *Lasiter*, the supreme court interpreted A.R.S. section 23–1062.A to provide an injured worker coverage for reasonable and necessary medical expenses, notwithstanding the worker's possible failure to satisfy the notice requirement of this subsection.[4] *Id.* at 63, 839 P.2d at 1108. The court emphasized the constitutional mandate for workers' compensation benefits and the remedial nature of the Workers' Compensation Act. In commenting on the remedial nature of the Act, the court noted that it "must be construed liberally *to effect its purpose of*

---

**3.** Section 23–1065.C is adapted from the Model Workmen's Compensation and Rehabilitation Law, which has an identical written records requirement. *Salt River Project v. Industrial Comm'n*, 172 Ariz. 477, 480 & n. 4, 837 P.2d 1212, 1215 & n. 4 (App.1992).

**4.** Section 23–1062.A provides medical benefits for injured employees "upon notice to the employer."

*compensating employees for their industrial injuries." Id.* (emphasis added). Thus, the court refused to deny benefits to an injured worker absent express language mandating the denial. *Id.* (*citing Marriott Corp. v. Industrial Comm'n,* 147 Ariz. 116, 121–22, 708 P.2d 1307, 1312–13 (1985)). Because section 23–1062.A does not expressly state that an employee forfeits compensation benefits by failing to provide the employer adequate notice, the court concluded that notice is not a condition for recovering reasonable and necessary medical expenses. *Id.*

We agree with petitioner that *Lasiter* is inapposite. Unlike section 23–1062.A, which affects the availability of medical benefits to injured workers, section 23–1065.C affects an injured worker's benefits not at all. Instead, section 23–1065.C only apportions responsibility for permanent disability benefits between the employer and the Special Fund Division. *See* A.R.S. § 23–1065.C.4; *see also Schuff Steel Co. v. Industrial Comm'n,* 181 Ariz. 435, 443–44, 891 P.2d 902, 910–11 (App. 1994) (distinguishing special fund statutes that provide benefits to injured workers). The question answered by section 23–1065.C is not whether an injured worker recovers benefits, but whether the employer (or its insurance carrier) can obtain reimbursement from the special fund for the benefits to which the injured worker is entitled. Thus, section 23–1065.C neither impacts the primary purpose underlying workers' compensation—to compensate employees for their industrial injuries—nor fulfills a constitutional mandate.

Furthermore, unlike section 23–1062.A, which does not expressly require notice as a condition to recover medical expenses, section 23–1065.C does expressly require compliance with the written records requirement as a condition to a claim for apportionment.[5]

Consequently, *Lasiter* does not support Argonaut's argument that we must interpret section 23–1065.C.2 broadly.

### B.

Argonaut alternatively argues that we should resolve any ambiguity in its favor because the broad interpretation it urges furthers the statutory purpose of encouraging employers to employ handicapped workers. The administrative law judge agreed, concluding that "the clause in Sec. 1065(C) allowing qualifying knowledge to occur after hire, during continuing employment, goes beyond that laudable intent to discourage not only discriminatory hiring but discriminatory discharge."

We agree that the purpose of apportioning liability for benefits through section 23–1065.C is to encourage employers to employ workers despite knowledge of their handicaps. *Special Fund Div. v. Industrial Comm'n,* 182 Ariz. 341, 344–45, 897 P.2d 643, 646–47 (App.1994); *see also* 2 Larson, *supra,* § 59.31.a. We also agree that the statute intends to encourage employers both to hire workers with knowledge of their impairments and to retain workers after acquiring this knowledge. Indeed, the statute expressly makes apportionment available if "the employee continued in employment after the employer acquired such knowledge." A.R.S. § 23–1065.C.2. Recognizing those purposes, however, does not answer whether the legislature intended to permit an employer to qualify for apportionment when the employer gains knowledge of an employee's preexisting impairment only *after* the employee sustains an industrial injury.

We conclude that relying upon the salutary purpose of section 23–1065 to permit apportionment when an employer has post-injury, but not pre-injury, knowledge of the preexisting impairment ignores the critical difference between the two periods of time. Before the industrial injury giving rise to the apportionment claim, an employer hiring or retaining a handicapped worker assumes increased risks that the worker will suffer a work-related injury or aggravated disability. The potential liability, however, remains contingent: the handicapped worker may never suffer an industrial injury. However, after

---

**5.** "[T]he claim involving the subsequent impairment is eligible for reimbursement ... *under the following conditions:* ... [t]he employer estab-lishes by written records that the employer had knowledge of the permanent impairment...." A.R.S. § 23–1065.C (emphasis added).

the industrial injury, the event creating liability has transpired: although the existence and degree of permanent disability may be undetermined, the potential for liability is certain.

Argonaut's broad interpretation therefore does not simply increase an employer's incentive to hire handicapped workers. It creates a fundamentally different incentive to qualify for apportionment by documenting a preexisting condition after an industrial injury. Permitting that practice would be similar to providing employers an option to buy casualty insurance to cover a casualty that has already occurred. We do not believe that the legislature intended such a result. If the legislature had intended to extend to employers this fundamentally different opportunity to obtain apportionment and thereby reduce their own liability, the legislature would have specified that knowledge acquired after the industrial injury satisfies section 23–1065.C.2.

Finally, Argonaut relies upon the reasoning of *Gilbane Co. v. Poulas,* 576 A.2d 1195 (R.I.1990), to support its position that the Model Act or a similar written records requirement may apply to an employer's knowledge of permanent impairment acquired after the industrial injury. However, *Gilbane* does not apply directly to this situation. In *Gilbane,* the employer had knowledge of the preexisting injury at the time it hired the employee, but the employer's only written record of the injury was created after the second industrial injury. The court held that testimony of prior knowledge, coupled with the subsequent written record, provided "credible evidence supporting the existence of knowledge of [the employee's previous] injury and subsequent hiring in spite of the knowledge." *Id.* at 1197. In contrast, here we consider whether knowledge of a preexisting condition that the employer acquired *after* the industrial injury fulfills the statutory requirement.

As petitioner notes, the majority of jurisdictions that have considered the written records requirement require the employer to know of the employee's preexisting condition before the industrial injury. *See, e.g., Sea–Land Services,* 737 P.2d at 795 & n. 2; *Padilla v. Chavez,* 105 N.M. 349, 351, 732 P.2d 876, 878 (Ct.App.1987); *U.S. Pipe & Foundry Co. v. Caraway,* 546 S.W.2d 215, 218 (Tenn.1977); *see also* 2 Larson, *supra,* § 59.33.a ("Since the underlying policy extends to retention of the handicapped, manifestation [of the impairment] at any time *prior to the final injury is sufficient.*") (emphasis added).

Argonaut attempts to distinguish decisions from other jurisdictions because they interpret specific statutory language that requires the employer to have knowledge before the industrial injury. We do not believe that differences in the wording of Arizona's written records requirement warrant a different interpretation than that afforded by the majority of jurisdictions. We agree that Arizona's legislature did not expressly state that an employer must acquire knowledge before the industrial injury. On the other hand, the legislature also did not state that an employer may acquire knowledge after the industrial injury. Although such an omission may imply that the legislature did not intend to require knowledge before the injury, *see Arizona Bd. of Regents v. State ex rel. Public Safety Retirement Fund Manager Adm'r,* 160 Ariz. 150, 157, 771 P.2d 880, 887 (App. 1989), the latter interpretation would defeat the purpose of the written records requirement: if the written record establishing employer knowledge does not precede the injury, then apportionment would *always* be available as soon as the employer acquires a written medical report, occasioned by the claim but also reporting preexisting impairments,[6] a result that would render the statutory requirements pointless. *Schuff Steel Co.,* 181 Ariz. at 446, 891 P.2d at 913 ("To interpret this requirement as Argonaut sug-

---

**6.** In its answering brief, Argonaut acknowledges that, after an industrial injury, the determination of permanent impairment necessary for apportionment may take place some time after the original injury. "During that period of time, the employee may remain continuously employed by the employer, and . . ., especially while being treated for the industrial injury, pre-existing conditions may come to the attention of the employer." Respondent Employer and Carrier's Answering Brief at 21–22.

gests, however, totally eviscerates the written records requirement."); *see also Walker v. City of Scottsdale,* 163 Ariz. 206, 210, 786 P.2d 1057, 1061 (App.1989) (court must give meaning to each component of statute so that no part of statute becomes void, inert, redundant, or trivial). Thus, we follow the majority rule and conclude that the knowledge requirement of section 23–1065.C refers to knowledge acquired before the date of the industrial injury.

### III.

For the foregoing reasons, we set aside the decision upon review.

NOYES, P.J., and EINO M. JACOBSON, J.,** concur.