HOLIDAY RETIREMENT CORPORATION, Appellant, v. THE STATE OF NEVADA DIVISION OF INDUSTRIAL RELATIONS, Respondent.

No. 54968

April 5, 2012

274 P.3d 759

[Rehearing denied June 1, 2012]
[En banc reconsideration denied August 1, 2012]

*Lewis Brisbois Bisgaard & Smith, LLP*, and *Nancy E. Helmbold, Alyssa M. Fischer*, and *Daniel L. Schwartz*, Las Vegas, for Appellant.

*Nancy E. Wong*, Carson City; *John F. Wiles* and *Jennifer J. Leonescu*, Henderson, for Respondent.

Before DOUGLAS, HARDESTY and PARRAGUIRRE, JJ.

## OPINION

By the Court, DOUGLAS, J.:

In this appeal, we review a district court order denying a petition for judicial review in a workers' compensation action. We conclude that the district court did not err in denying judicial review because an employer is required to acquire knowledge of an employee's permanent physical impairment before a subsequent injury occurs to qualify for reimbursement from the subsequent injury account for private carriers under NRS 616B.587(4). Therefore, we affirm.

### FACTS

Appellant Holiday Retirement Corporation hired a woman and her husband as co-managers of a retirement residence. The woman suffered injury arising out of and in the course of her employment in 2003. A doctor diagnosed her injury as a lumbar strain and gave her modified duty restrictions. The pain persisted, and she was taken off work duty to allow full-time medication. An MRI revealed evidence of previous back surgeries, which were performed in 1989 and 1993. This was the first record provided to Holiday of the woman's previous permanent physical impairment. To treat the 2003 injury, she underwent another surgery. After surgery, she was again given modified work duty restrictions, and she worked four hours per day, five days a week. However, the parties do not dispute that the husband and wife team performed their full co-managerial duties during this time. Less than one year after sustaining the 2003 industrial injury, the injured employee and her husband resigned.

Subsequently, an impairment rating examiner designated by respondent State of Nevada Division of Industrial Relations (DIR) performed a permanent partial disability (PPD) evaluation on the woman and found her to have 35-percent whole person impairment. The examiner apportioned 75 percent of the 35-percent impairment to the employee's 2003 industrial injury and therefore

suggested that she receive a PPD award based on 26-percent whole person impairment, which was paid.

Holiday's insurance carrier sought reimbursement from the Subsequent Injury Account for Private Carriers (Account) pursuant to NRS 616B.587, which provides for reimbursement when an employee sustains an injury entitling him or her to compensation for disability that is substantially greater due to the combined effects of a preexisting impairment and the subsequent injury than that which would have resulted from the subsequent injury alone, provided certain conditions are met. NRS 616B.587. One such condition is that the insurer "establish by written records that the employer had knowledge of the 'permanent physical impairment' at the time the employee was hired or that the employee was retained in employment after the employer acquired such knowledge." NRS 616B.587(4). DIR denied the request for reimbursement. In its determination memorandum, DIR noted that NRS 616B.587(4) had not been satisfied because Holiday did not have knowledge of its employee's prior permanent physical impairment until the day after her 2003 industrial injury, and there was no indication that it "provided a permanent modified duty or permanent full duty position to [its injured employee]."

Holiday administratively challenged the DIR's decision.[1] In affirming the DIR's decision on an alternative basis, the appeals officer found that the purpose of the Account was "to encourage employers to hire workers with disabilities and to provide relief to the employer and its private carrier in the event of a *subsequent* injury." Citing to a treatise on workers' compensation law, the appeals officer explained that this policy underlying the Account also extended to retaining workers with prior impairments, so long as they were retained (1) after the employer gained knowledge of the condition and (2) before the subsequent injury. The appeals officer noted that "[i]f . . . relief . . . is provided to employers

---

[1]After an administrative hearing, the appeals officer requested supplemental briefing on a related, but different, issue: "[w]hether the proper context of NRS 616B.587(4) is that the employer must demonstrate in writing that it either hired or retained the employee after it had knowledge of his disability *prior to the second injury* in order to be considered for relief from the Subsequent Injury Account Fund." DIR responded by submitting a letter stating that it had ceased denying reimbursement in cases where the employer learns of the preexisting impairment after the subsequent injury based on a permanent injunction enjoining the Subsequent Injury Board for Self-Insured Employers from that practice. Holiday responded by agreeing with DIR that the issue had been decided by a permanent injunction that forbids the Self-Insured Employer's Board from denying claims made against the Subsequent Injury Fund when the employer is not aware of the existing or previous injury before the subsequent injury.

who retain an injured employee after the second injury, with no ev-idence that the employee was hired or retained with knowledge of his first injury, the employer benefits from the [Account] without having first met the eligibility requirements of NRS 616B.587(4)."

The appeals officer found that under NRS 616B.587(4), in order to be considered for relief from an Account, the employer must have either hired or retained the employee with knowledge of the preexisting impairment prior to the second injury. He further found that whether the retention provision of NRS 616B.587 has been met must be determined at the time the employee sustains the sub-sequent injury. The appeals officer reasoned that any other inter-pretation of NRS 616B.587(4) would render its "written records" requirement superfluous. He explained that because the second in-jury is already the subject of the written claim from which the pri-vate carrier is seeking relief, the written records requirement of NRS 616B.587(4) is clearly intended to be in relation to the pre-existing disability. He noted that this interpretation was in accor-dance with how other jurisdictions interpreted similar statutes. The appeals officer concluded that substantial evidence in the record supported DIR's conclusion that NRS 616B.587(4) was not satisfied and affirmed the denial of Holiday's request for reim-bursement from the Account.

Holiday filed a petition for judicial review, which the district court denied based on its determination that the appeals officer in-terpreted NRS 616B.587 correctly. This appeal followed.

## DISCUSSION

This court's function when reviewing a district court's order denying a petition for judicial review is the same as the district court's: to determine whether substantial evidence supports the ap-peals officer's decision and whether that decision is affected by legal error. *Kay v. Nunez*, 122 Nev. 1100, 1105, 146 P.3d 801, 805 (2006). This court reviews de novo pure questions of law, in-cluding the administrative construction of statutes. *Id.* at 1107-08, 146 P.3d at 806-07. This court gives deference to an agency's in-terpretation of its statutes and regulations "if the interpretation is within the language of the statute." *Dutchess Bus. Servs. v. State, Bd. of Pharm.*, 124 Nev. 701, 709, 191 P.3d 1159, 1165 (2008). But if " 'the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself.' " *Madera v. SIIS*, 114 Nev. 253, 257, 956 P.2d 117, 120 (1998) (quoting *Erwin v. State of Nevada*, 111 Nev.

1535, 1538-39, 908 P.2d 1367, 1369 (1995)). It is the prerogative of the Legislature, not this court, to change or rewrite a statute. *Breen v. Caesars Palace*, 102 Nev. 79, 86-87, 715 P.2d 1070, 1075 (1986).

NRS 616B.587(4) states:

> To qualify under this section for reimbursement from the [Account], the private carrier must establish by written records that the employer had knowledge of the "permanent physical impairment" at the time the employee was hired or that the employee was retained in employment after the employer acquired such knowledge.

We find that this language is plain and unambiguous. Therefore, neither the appeals officer nor this court is permitted to search for meaning beyond the statute itself.

Based on the plain language of NRS 616B.587(4), a private carrier may qualify for reimbursement under the Account in one of two ways: by establishing with written records either that the employer (1) had knowledge of the permanent physical impairment at the time the employee was hired or (2) retained its employee after it acquired knowledge of the permanent physical impairment. Here, the parties do not dispute that Holiday had no knowledge of its employee's preexisting permanent disability at the time she was hired. However, the parties dispute whether an employer must acquire knowledge of an employee's permanent physical impairment before the subsequent injury occurs in order to satisfy the retention requirement of NRS 616B.587(4).

The majority of jurisdictions that have considered such a knowledge requirement within the context of a subsequent injury fund have held that an employer must acquire knowledge of an employee's permanent physical impairment before the subsequent injury occurs to qualify for reimbursement. *See Special Fund Div. v. Indus. Com'n of Ariz.*, 909 P.2d 430, 434 (Ariz. Ct. App. 1995). This interpretation recognizes the "critical difference" between an employer who retains a permanently physically impaired worker before a subsequent injury occurs and one who retains a permanently physically impaired worker after the subsequent injury has already occurred. *Id.* at 433. In the former situation, the potential for liability remains contingent; in the latter, the potential for liability is certain. *Id.* at 433-34. Permitting reimbursement in the latter situation is akin to "providing employers an option to buy casualty insurance to cover a casualty that has already occurred." *Id.* at 434.

We now adopt the sound reasoning of the majority and hold that an employer must acquire knowledge of an employee's permanent

physical impairment before the subsequent injury occurs to qualify for reimbursement from the subsequent injury account for private carriers under NRS 616B.587(4). Accordingly, we affirm the district court's order denying judicial review.

HARDESTY and PARRAGUIRRE, JJ., concur.