134 Nev., Advance Opinion 93

# IN THE SUPREME COURT OF THE STATE OF NEVADA

NORTH LAKE TAHOE FIRE
PROTECTION DISTRICT; AND
PUBLIC AGENCY COMPENSATION
TRUST,
Appellants,
vs.
THE BOARD OF ADMINISTRATION
OF THE SUBSEQUENT INJURY
ACCOUNT FOR THE ASSOCIATIONS
OF SELF-INSURED PUBLIC OR
PRIVATE EMPLOYERS; AND
ADMINISTRATOR OF THE STATE OF
NEVADA DEPARTMENT OF
BUSINESS AND INDUSTRY, DIVISION
OF INDUSTRIAL RELATIONS,
Respondents.

No. 70592

FILED

DEC 06 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review in an administrative law matter. Eighth Judicial District Court, Clark County; Rob Bare, Judge.

*Reversed and remanded.*

Thorndal Armstrong Delk Balkenbush & Eisinger and Robert F. Balkenbush and Kevin A. Pick, Reno,
for Appellants.

The Law Offices of Charles R. Zeh, Esq., and Charles R. Zeh, Reno,
for Respondent Board of Administration of the Subsequent Injury Account for the Associations of Self-Insured Public or Private Employers.

Donald C. Smith and Jennifer J. Leonescu, Henderson,
for Respondent Department of Business and Industry, Division of Industrial
Relations.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, DOUGLAS, C.J.:

Under NRS 616B.578, an employer may qualify for reimbursement on a workers' compensation claim if the employer proves by written record that it retained its employee after acquiring knowledge of the employee's permanent physical impairment and before a subsequent injury occurs. In this appeal, we examine the statutory definition of a "permanent physical impairment," which generally defines a permanent physical impairment as "any permanent condition . . . of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment," but also states that "a condition is not a 'permanent physical impairment' unless it would support a rating of permanent impairment of 6 percent or more of the whole person." NRS 616B.578(3). We conclude that requiring an employer to prove that it had knowledge of a preexisting permanent physical impairment that would support a rating of at least 6% whole person impairment is a reasonable interpretation of NRS 616B.578. However, we further conclude that this statute cannot be reasonably interpreted to require knowledge of a specific medical diagnosis in order for an employer to successfully seek reimbursement. In the present case, it is unclear whether the employer knew of any permanent condition that hinders the employee's employment,

and whether it could be fairly and reasonably inferred from the written record that the employer knew of the employee's preexisting permanent physical impairment, which supported a rating of at least 6% whole person impairment. Therefore, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

In 1981, appellant North Lake Tahoe Fire Protection District (the District) hired a man as a paramedic and firefighter (the employee). For approximately 20 years, the employee worked without a documented injury. Between 2002 to 2007, however, the employee injured his back on numerous occasions while on duty and sought treatment following his injuries. Doctors diagnosed the employee with various back conditions, such as herniated nucleus pulposus (HNP), radiculopathy, back sprain, and lumbar disc abnormalities.

In November 2007, the employee then suffered a subsequent back injury while on duty, and following this subsequent injury, doctors specifically diagnosed the employee with spondylolisthesis.[1] A few years later, the employee underwent back surgery for the spondylolisthesis, and a year after his surgery, the employee retired.

Shortly after the employee retired, Dr. David Berg conducted a permanent partial disability (PPD) evaluation on the employee in response to the employee's November 2007 back injury and rated the employee with a 21% whole person impairment (WPI) with no apportionment for any preexisting condition. Next, at the request of the third-party administrator

---

[1]Spondylolisthesis "is the '[f]orward movement of the body of one of the lower lumber vertebrae on the vertebra below it, or upon the sacrum.'" *Lederer v. Viking Freight, Inc.*, 89 P.3d 1199, 1200 n.2 (Or. Ct. App. 2004) (alteration in original) (quoting *Stedman's Medical Dictionary* 1678 (27th ed. 2000)).

SUPREME COURT OF NEVADA

(O) 1947A

3

of the underlying workers' compensation claim, Dr. Jay Betz reviewed the employee's medical records and Dr. Berg's PPD evaluation. Dr. Betz disagreed with Dr. Berg's conclusion regarding no apportionment and instead found that the employee's spondylolisthesis was a preexisting impairment with a 7-9% WPI. Dr. Betz further found that at least half of the 21% WPI should be apportioned to the employee's preexisting conditions, and thus, 11% WPI should be apportioned to the November 2007 injury (10.5% rounded up). After receiving Dr. Betz's report, Dr. Berg agreed with Dr. Betz by apportioning one-half of the WPI to preexisting conditions. Thereafter, the employee saw Dr. G. Kim Bigley for a second PPD evaluation. Dr. Bigley found that the employee did not have spondylolisthesis prior to his November 2007 back injury, and thus, found that apportionment was inappropriate.

The insurer, appellant Public Agency Compensation Trust (PACT), paid the employee an 11% PPD award after apportionment. PACT then sought reimbursement under NRS 616B.578 from the Nevada Department of Business and Industry, Division of Industrial Relations (DIR). Respondent Administrator of DIR recommended denying PACT's claim for failure to show compliance with NRS 616B.578. PACT timely requested a hearing before respondent Board of Administration of the Subsequent Injury Account for the Associations of Self-Insured Public or Private Employers (the Board) to challenge the Administrator's recommendation of denial.

Following a hearing, the Board issued its decision. The Board concluded, in pertinent part, that NRS 616B.578 required appellants to prove, by written record, that the District had knowledge of a preexisting permanent physical impairment amounting to a rating of at least 6% WPI.

Supreme Court
OF
Nevada

(O) 1947A

4

The Board also concluded that appellants were required to show that the District knew *specifically* of the employee's spondylolisthesis condition prior to the subsequent injury. Moreover, the Board found that the employee's preexisting conditions documented prior to his subsequent injury—including his HNP, radiculopathy, back sprain, and lumbar disc abnormalities—were not the same as spondylolisthesis and did not rise to the level of a permanent physical impairment as required by NRS 616B.578(3), and thus, appellants failed to satisfy NRS 616B.578. Based on the foregoing, the Board denied appellants' application for reimbursement. Appellants petitioned the district court for judicial review of the Board's decision. The district court affirmed the Board's decision and denied appellants' petition.

## DISCUSSION

### Standard of review

This court's role in reviewing an administrative agency's decision is identical to that of the district court, and we do not give any deference to the district court's order denying a petition for judicial review. *Elizondo v. Hood Mach., Inc.*, 129 Nev. 780, 784, 312 P.3d 479, 482 (2013). "Although statutory construction is generally a question of law reviewed de novo, this court defers to an agency's interpretation of its governing statutes and regulations if the interpretation is within the language of the statute." *Taylor v. State, Dep't of Health & Human Servs.*, 129 Nev. 928, 930, 314 P.3d 949, 951 (2013) (internal quotation marks omitted); *see also Collins Disc. Liquors & Vending v. State*, 106 Nev. 766, 768, 802 P.2d 4, 5 (1990) ("[C]ourts should not substitute their own construction of a statutory provision for a reasonable interpretation made by an agency.").

Moreover, this court reviews an administrative agency's factual findings for clear error or an abuse of discretion, and will only overturn

SUPREME COURT
OF
NEVADA

(O) 1947A

5

those findings if they are not supported by substantial evidence. NRS 233B.135(3)(e), (f); *Elizondo*, 129 Nev. at 784, 312 P.3d at 482. "Substantial evidence is evidence which a reasonable mind might accept as adequate to support a conclusion." *Nev. Pub. Emps. Ret. Bd. v. Smith*, 129 Nev. 618, 624, 310 P.3d 560, 564 (2013) (internal quotation marks omitted). Substantial evidence may be shown inferentially if certain evidence is absent. *Wright v. State, Dep't of Motor Vehicles*, 121 Nev. 122, 125, 110 P.3d 1066, 1068 (2005). "If the [administrative] agency's decision lacks substantial evidentiary support, the decision is unsustainable as being arbitrary or capricious." *City of Reno v. Reno Police Protective Ass'n*, 118 Nev. 889, 899, 59 P.3d 1212, 1219 (2002).

*Whether the Board erred in denying appellants reimbursement*

Appellants argue that the Board committed clear legal error when considering whether appellants were entitled to reimbursement. In particular, appellants contend that the Board erred in interpreting the definition of "permanent physical impairment" by requiring proof that appellants had specific knowledge of spondylolisthesis prior to the employee's subsequent injury. Instead of requiring proof that an employer had knowledge of a specific medical diagnosis, appellants contend that an employer's general knowledge of a permanent, preexisting impairment that could pose a hindrance to employment or reemployment satisfies the plain meaning of, and public policy behind, NRS 616B.578. Conversely, respondents argue that appellants erroneously disregard the 6% rule under the plain meaning of NRS 616B.578(3). While we agree with appellants that they were not required to show that they knew the employee suffered specifically from spondylolisthesis prior to his subsequent injury in order to satisfy NRS 616B.578, we also agree with respondents that NRS

SUPREME COURT
OF
NEVADA

(O) 1947A

6

616B.578(3) requires a condition to amount to at least 6% WPI to be considered a permanent physical impairment.

*The Board's interpretation of NRS 616B.578 was reasonable in part*

Nevada's Subsequent Injury Account for the Associations of Self-Insured Public or Private Employers (the Account) is a workers' compensation program that was created to encourage self-insured employer members of associations to hire and retain workers with preexisting disabling conditions. Crystal M. McGee, Legislative Counsel Bureau Research Division, *Background Paper 01-1: A Study of Subsequent Injury Funds* 1 (2000). In furtherance of this purpose, NRS 616B.578(1) allows for reimbursement of workers' compensation paid by an employer where an employee sustains an injury in the course of his or her employment that is "substantially greater [due to] the combined effects of the preexisting impairment and the subsequent injury than that which would have resulted from the subsequent injury alone." NRS 616B.578(1). However, certain conditions must be met. *Cf. Holiday Ret. Corp. v. State, Div. of Indus. Relations*, 128 Nev. 150, 152, 274 P.3d 759, 760 (2012) (analyzing NRS 616B.587, which has provisions identical to NRS 616B.578, but applies to private carriers instead of associations of self-insured public or private employers). To qualify for reimbursement, the associations of self-insured public or private employers must establish by written record "either that the employer (1) had knowledge of the permanent physical impairment at the time the employee was hired or (2) retained its employee after it acquired knowledge of the permanent physical impairment." *Id.* at 154, 274 P.3d at 761. In the second scenario, "an employer must acquire knowledge of an employee's permanent physical impairment before the subsequent injury occurs to qualify for reimbursement." *Id.* at 154-55, 274 P.3d at 762.

In interpreting NRS 616B.578(4), this court must look to NRS 616B.578(3), which defines "permanent physical impairment" as:

> [A]ny permanent condition, whether congenital or caused by injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee is unemployed. For purposes of this section, a condition is not a "permanent physical impairment" unless it would support a rating of permanent impairment of 6 percent or more of the whole person . . . .

Here, the Board interpreted NRS 616B.578 as "requir[ing] an applicant to prove by its contemporaneous written record that it had knowledge of a preexisting permanent physical impairment . . . [that] would support a rating of 6% [WPI] or more." In giving effect to the plain meaning of the statute's relevant subsections, we conclude that the Board's statutory interpretation of NRS 616B.578 was reasonable. Appellants' reliance solely on the first sentence of NRS 616B.578(3) inappropriately renders the second sentence of the statute requiring at least 6% WPI nugatory. *See S. Nev. Homebuilders Ass'n v. Clark Cty.*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005) ("When interpreting a statute, this court must give its terms their plain meaning, considering its provisions as a whole so as to read them in a way that would not render words or phrases superfluous or make a provision nugatory." (internal quotation marks omitted)).

However, the Board also concluded that appellants failed to satisfy NRS 616B.578(4) because "there is no proof by written record that applicant knew of spondylolisthesis, until after the subsequent industrial injury occurred." Thus, the Board concluded that appellants were required to show that the District knew of the employee's specific medical condition prior to his subsequent injury. That interpretation of the statute is not

SUPREME COURT
OF
NEVADA

(O) 1947A

8

reasonable because NRS 616B.578(3) plainly requires a showing of *"any permanent condition"* that hinders employment. (Emphasis added.)

Moreover, in Alaska, a "permanent physical impairment" is similarly defined in comparison to the first sentence in NRS 616B.578(3). *See* Alaska Stat. § 23.30.205(f) (2016). However, instead of defining a permanent physical impairment based on "a rating of permanent impairment of 6 percent or more of the whole person," NRS 616B.578(3), Alaska's statute prescribes that a condition may not be considered a "permanent physical impairment" unless the condition is one of 27 conditions statutorily listed or the condition "would support a rating of disability of 200 weeks or more if evaluated according to standards applied in compensation claims." Alaska Stat. § 23.30.205(f). Considering the similarity between the language of Alaska's relevant statute and NRS 616B.578(3), we are persuaded by the Supreme Court of Alaska's interpretation of the written record requirement.

The Supreme Court of Alaska has stated that "the written record does not need to contain the exact medical terminology describing the condition" in order to qualify for reimbursement. *VECO Alaska, Inc. v. State, Dep't of Labor, Div. of Workers' Comp., Second Injury Fund (VECO)*, 189 P.3d 983, 989 (Alaska 2008). Rather, the employer satisfies the written record requirement by showing that the employee's preexisting condition "could reasonably be due to one of the conditions [recognized by statute], even if the employer cannot precisely identify the specific medical condition." *Id.* "[T]he statutory standard is the employer's knowledge [of the employee's condition], not the knowledge of either the employee or his physicians." *Id.* at 991. In other words, "[a]n employer is entitled to reimbursement from the Second Injury Fund if it produces a written record

from which its prior knowledge of the employee's qualifying disability can fairly and reasonably be inferred." *Id.* at 988 (internal quotation marks omitted).

We are persuaded by the reasoning in *VECO*, and thus, we conclude that appellants were not required to show that the employer knew of the exact medical terminology for the employee's permanent physical impairment, specifically, spondylolisthesis, prior to the subsequent injury. This interpretation of NRS 616B.578 supports the public policy behind the Account, which encourages employers to knowingly hire or retain employees who suffer from a permanent physical impairment. However, the employee's preexisting permanent physical impairment, which is recognized by statute, must be fairly and reasonably inferred from the written record. In Nevada, the impairment must amount to a minimum of 6% WPI. NRS 616B.578(3). Here, Dr. Betz and Dr. Berg apportioned 10.5% WPI to preexisting conditions, and Dr. Betz further specified that spondylolisthesis was the preexisting condition with 7-9% WPI. This mathematically leaves the employee's other conditions, such as HNP, radiculopathy, back sprain, and lumbar disc abnormalities, with a maximum of 4% WPI. Consequently, because none of his other conditions could meet the 6% WPI requirement of the employer's written record, spondylolisthesis was the employee's only permanent physical impairment recognizable under the statute.[2] Although appellants were not required to show that the employer knew of the employee's spondylolisthesis

---

[2]For this reason, we conclude that the Board's finding that the employee's other preexisting conditions documented prior to the subsequent injury did not rise to the level of a permanent physical impairment as required by NRS 616B.578(3) is supported by substantial evidence.

specifically, knowledge of a qualifying permanent impairment had to be fairly and reasonably inferred from the written record. After review of the record, we find that it is unclear whether the employer actually knew of any permanent condition that hinders employment, and it is further unclear whether it could be fairly and reasonably inferred from the written record that the employer knew of the employee's spondylolisthesis. Therefore, due to lack of clarity concerning the employer's specific knowledge, and in light of *VECO*, we reverse the district court's decision and remand this matter for the district court to further remand to the Board for proceedings consistent with this opinion as to knowledge of the employee's hindering condition constituting a preexisting permanent impairment.

_____, C.J.
Douglas

We concur:

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

