139 Nev., Advance Opinion 30

IN THE SUPREME COURT OF THE STATE OF NEVADA

RICHARD L. CANDELARIA,
Appellant,
vs.
MICHAEL EDWARD KELLY,
Respondent.

No. 83859

**FILED**

SEP 1 4 2023

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

Appeal from a divorce decree. Eighth Judicial District Court, Family Division, Clark County; Gerald W. Hardcastle, Sr. Judge, and Mary D. Perry, Judge.

*Affirmed.*

Greenberg Traurig, LLP, and Tami D. Cowden and Elliot Anderson, Las Vegas,
for Appellant.

The Dickerson Karacsonyi Law Group and Robert P. Dickerson and Sabrina M. Dolson, Las Vegas,
for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, STIGLICH, C.J.:

In this appeal, we determine the date of a same-sex marriage for the purposes of property division in divorce. Appellant Richard Candelaria and respondent Michael Kelly formally married in California in

23-30097

2008. At that time, Nevada did not permit same-sex marriage or recognize out-of-state same-sex marriages. In 2015, the United States Supreme Court held in *Obergefell v. Hodges* that same-sex couples have the fundamental right to marry on the same terms and conditions as opposite-sex couples and that states must recognize same-sex marriages lawfully performed in states that already permitted such marriages. 576 U.S. 644, 675-76, 681 (2015). In their 2021 divorce, Richard argued that the district court should backdate the start of the parties' marriage to either 1991 or 1992—when his relationship with Michael became serious—because they would have married then but for Nevada's unconstitutional ban on same-sex marriage. The district court declined to backdate the marriage, finding no law to support such an action, and relied on 2008 as the date of the marriage. Richard now urges this court to adopt a factor-based test to make such a determination.

As an issue of first impression, we examine *Obergefell*'s retroactive effect. We hold that *Obergefell* requires Nevada courts to recognize same-sex marriages performed in other states even if, at the time of the out-of-state marriage, Nevada did not permit or recognize such marriages. Accordingly, here, we recognize 2008 as the date of the marriage. *Obergefell*, however, does not require Nevada courts to backdate a marriage. Without a mandate from *Obergefell*, we consider whether to craft a judicial remedy. Nevada enacted a statutory prohibition on common-law marriage in 1943. To adopt a "but for" factor-based test is akin to recognizing a common-law marriage formed in Nevada, and we decline to craft a judicial exception to this long-standing and express ban. Because the district court order accords with our holdings, we affirm.

## FACTS AND PROCEDURAL HISTORY

Appellant Richard Candelaria and respondent Michael Kelly met in July 1991 and began dating. They moved in together in November 1991 and, over the following years, relocated to various states for lucrative work opportunities for Michael. In July 1992, the couple exchanged rings. When California legalized same-sex marriage in 2008, the couple purchased new rings, traveled to California, and married.

In 2020, Michael filed for divorce. Richard counterclaimed for quantum meruit and breach of an implied contract, arguing that they had an agreement to hold property acquired since November 1991 or July 1992 as community property. Eventually, Michael and Richard agreed to divide most assets evenly. But they did not resolve the character of two assets: (1) Michael's 401(k) account, which he opened in 1984 and did not contribute to after 2008; and (2) Michael's shares of stock acquired as part of his employment between 1996 and 2004.

At a bench trial, Michael argued that because he acquired these assets before the 2008 marriage and did not contribute to the 401(k) account afterward, they are his separate property and not subject to division in the divorce. According to Richard, however, the marriage actually began in either November 1991 or July 1992, and thus the 401(k) account and shares of stock were acquired or funded during marriage and are community property subject to division in divorce. Richard testified that he and Michael would have officially married in November 1991 or July 1992 but for Nevada's unconstitutional prohibition on same-sex marriage. Michael,

SUPREME COURT
OF
NEVADA

(O) 1947A

on the other hand, testified that he did not consider himself married until 2008.[1]

The district court entered a divorce decree rejecting Richard's claims and characterizing the 401(k) account and shares of stock as Michael's separate property. Specifically, the court found that Richard and Michael married in 2008 and that no law supported backdating the start of the marriage to the beginning of the relationship to remedy the unconstitutional ban on same-sex marriage. Richard appeals.[2]

## DISCUSSION

We review the disposition of community property for an abuse of discretion. *Kogod v. Cioffi-Kogod*, 135 Nev. 64, 75, 439 P.3d 397, 406 (2019). However, we review the interpretation of caselaw and statutes de novo. *Liu v. Christopher Homes, LLC*, 130 Nev. 147, 151, 321 P.3d 875, 877 (2014) (caselaw); *Zohar v. Zbiegien*, 130 Nev. 733, 737, 334 P.3d 402, 405 (2014) (statutes).

When Richard and Michael began dating, Nevada did not recognize same-sex marriages as a matter of statutory law. NRS 122.020(1) (1991). In 2002, Nevada voters amended the state constitution to provide "[o]nly a marriage between a male and a female person shall be recognized and given effect in this state." Nev. Const. art. 1, § 21 (repealed 2020). In 2014, the Ninth Circuit Court of Appeals held that Nevada's ban on same-sex marriage was unconstitutional and that Nevada must recognize same-

---

[1]Sr. Judge Gerald W. Hardcastle presided over the bench trial and entered findings of fact and conclusions of law. Judge Mary D. Perry signed the formal divorce decree incorporating Sr. Judge Hardcastle's decision.

[2]On appeal, Richard does not challenge the district court's denials of his implied contract and quantum meruit claims.



sex marriages. *Latta v. Otter*, 771 F.3d 456, 476-77 (9th Cir. 2014). In 2015, the United States Supreme Court in *Obergefell* held that "the right to marry is a fundamental right," in part because of the "constellation of benefits" that attach to marriage. *Obergefell*, 576 U.S. at 670, 675. The court then held that "same-sex couples may exercise the right to marry" on the same terms and conditions as opposite-sex couples (right-to-marry holding) and that states must "recognize a lawful same-sex marriage performed in another State" (recognition holding). *Id.* at 665, 681. In 2020, Nevada voters amended the state constitution to provide "[t]he State of Nevada . . . shall recognize marriages and issue marriage licenses to couples regardless of gender." Nev. Const. art. 1, § 21.

*Obergefell's recognition holding applies retroactively to require Nevada courts to recognize out-of-state same-sex marriages licensed and performed before 2014*

The Supreme Court has "recognized a general rule of retrospective effect for the constitutional decisions of th[e Supreme] Court." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 94 (1993) (internal quotation marks omitted). When a new constitutional rule is applied, "that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." *Id.* at 97. We join many jurisdictions in concluding that *Obergefell* applies retroactively. *See, e.g.*, *LaFleur v. Pyfer*, 479 P.3d 869, 874 (Colo. 2021) ("[W]e conclude that [*Obergefell*] applies retroactively to marriages (including common law marriages) predating that decision."); *In re J.K.N.A.*, 454 P.3d 642, 649 (Mont. 2019) ("*Obergefell's* holding that state prohibitions against same-sex marriage violate the United States Constitution operates retroactively in relation to [a party's] claim that a

common law marriage existed with [her same-sex partner] . . . ."). Here, *Obergefell*'s holding that states must recognize same-sex marriages lawfully licensed and performed in another state applies retroactively so that we must recognize the 2008 California marriage despite Nevada's prohibition at that time. *See LaFrance v. Cline*, No. 76161, 2020 WL 7663476, at \*2 (Nev. Dec. 23, 2020) (Order Affirming in Part, Reversing in Part, and Remanding) (holding that *Obergefell*'s recognition holding applies retroactively so that Nevada courts must recognize a 2003 marriage between a same-sex couple).

*Obergefell's right-to-marry holding cannot be given pre-marriage retroactive effect in this case*

While recognition may apply retroactively, *Obergefell* does not say that same-sex couples in committed relationships will be deemed married before they meet the legal requirements of marriage—which Richard and Michael did when they married in 2008 in California. Rather, *Obergefell* demands that same-sex couples be afforded the opportunity to marry and the benefits attached to marriage on the same terms and conditions as opposite-sex couples. *Obergefell*, 576 U.S. at 675-76. Accordingly, in states recognizing common-law marriages, *Obergefell*'s right-to-marry holding has retroactive effect because in those states opposite-sex couples may prove a common-law marriage formed before the *Obergefell* decision, so same-sex couples must be afforded the same opportunity. *See, e.g., LaFleur*, 479 P.3d at 882 ("Because a different-sex couple may prove a common law marriage in Colorado predating 2014, a same-sex couple must also have that opportunity."); *In re J.K.N.A.*, 454 P.3d at 649 (holding that *Obergefell* applies retroactively for a claim that a common-law marriage existed).

In contrast, the right-to-marry holding has no retroactive effect here because Nevada does not recognize common-law marriages. In Nevada, "[c]onsent alone will not constitute marriage; it must be followed by solemnization as authorized and provided by [NRS Chapter 122]." NRS 122.010(1). Solemnization requires the parties to declare, in the presence of an authorized official and at least one witness, that "they take each other as spouses." NRS 122.110(1), (2). Nevada does not recognize common-law marriages formed after March 29, 1943, NRS 122.010(2), and this court has consistently reaffirmed that Nevada does not recognize such marriages, *Gilman v. Gilman*, 114 Nev. 416, 421 n.1, 956 P.2d 761, 764 n.1 (1998); *Watson v. Watson*, 95 Nev. 495, 496, 596 P.2d 507, 507 (1979). The solemnization requirement and ban on common-law marriage apply to all couples regardless of gender or sexual orientation. Here, it is undisputed that there was no solemnization prior to 2008.[3] Just as an opposite-sex couple could not have married in 1991 or 1992 absent solemnization, Richard and Michael were not and could not have been married under Nevada law in 1991 or 1992.

---

[3]Accordingly, Richard's reliance on *Schuett v. FedEx Corp.*, 119 F. Supp. 3d 1155 (N.D. Cal. 2016), is misplaced. There, a federal district court discussed a state court decision to cure a defect in a same-sex couple's marriage in a case seeking to recover employment benefits. *Id.* at 1160-62. The same-sex couple's marriage was solemnized, but they could not obtain a marriage license because of the same-sex marriage ban. *Id.* at 1158. The state court declared that the couple married on the date of the solemnization. *Id.* The federal district court noted that it lacked authority to set aside the state court order declaring the date of the marriage. *Id.* at 1161. It is unclear on what basis the state court declared that the couple married on the date of the solemnization. Assuming, however, the state relied on retroactivity, the court could refer back to solemnization. Here, there was no solemnization in 1991 or 1992 to refer back to.

Other jurisdictions agree that *Obergefell* does not require courts to retroactively construct a marriage when the jurisdiction does not recognize common-law marriage. In *Phillip Morris USA, Inc. v. Rintoul*, the Florida District Court of Appeal considered whether *Obergefell* required the court to retroactively find that a same-sex couple were married if one partner could prove that but for Florida's unconstitutional ban, the couple would have married earlier. 342 So. 3d 656, 665 (Fla. Dist. Ct. App. 2022). In rejecting that argument, the court reasoned that Florida does not recognize common-law marriages and that *Obergefell* "did not compel states to convert all same-sex relationships predating that decision into formally recognized marriages." *Id.* at 666. Similarly, a New York appellate court observed that *Obergefell* did not require the court to retroactively recognize a commitment ceremony between a same-sex couple as a legally valid marriage. *In re Estate of Leyton*, 22 N.Y.S.3d 422, 423 (App. Div. 2016). The Supreme Court of South Dakota also concluded that even assuming *Obergefell* applies retroactively, there is no marriage to retroactively recognize when there has been "no marriage, act of solemnization, or common-law marriage to refer back to." *Anderson v. S.D. Ret. Sys.*, 924 N.W.2d 146, 150 (S.D. 2019); *cf. Charron v. Amaral*, 889 N.E.2d 946, 950-51 (Mass. 2008) (rejecting an argument that the court must construct a marriage if a same-sex couple would have married earlier but for the unconstitutional ban on same-sex marriage based on a 2004 Massachusetts Supreme Court case decided on similar grounds to *Obergefell*).

*We cannot recognize a common-law marriage in Nevada in the face of NRS 122.010*

Richard argues that this court should backdate the start of his marriage to either November 1991 or July 1992 because he would have married Michael then but for Nevada's unconstitutional ban on same-sex

marriage. He emphasizes that he is not advocating for this court to adopt common-law marriage because he is asking this court to fashion a remedy to the unconstitutional ban.

Richard relies on an Oregon Court of Appeals case, *In re Madrone*, 350 P.3d 495 (Or. Ct. App. 2015). There, the statute at issue presumed the husband of a woman who carries a child conceived by artificial insemination is the legal father if the husband consented to the insemination. *Id.* at 496. In a previous case, the Oregon Court of Appeals declared the statute unconstitutional under the state constitution because it afforded the privilege of a parentage assumption on the basis of sexual orientation and in part because same-sex couples could not marry at the time. *Id.* Rather than striking the law, the court "extended the statute so that it applies when the same-sex partner of the biological mother consented to the artificial insemination." *Id.* (internal quotation marks omitted). *In re Madrone* determined how same-sex couples are entitled to legal parentage under the statute. Because the legislature's intent was to confer the benefit of the statute on married couples, not on unmarried couples, "the salient question [was] whether the same-sex partner *would have* chosen to marry before the child's birth had they been permitted to." *Id.* at 501. In other words, the inquiry was whether but for the ban on same-sex marriage, the couple would have married earlier.

Preliminarily, the Oregon Court of Appeal's interpretation of its state constitution is not binding on this court. That said, we are not persuaded by Richard's claim that he is not advocating for this court to adopt common-law marriage in Nevada because adopting the *In re Madrone* but-for test would in effect recognize a common-law marriage in violation of NRS 122.010, and he has not shown, absent a constitutional challenge, that

this court has equitable power to deviate from a statute. Under the *In re Madrone*'s test, a court would consider various factors in determining whether a same-sex couple would have married at some earlier date but for the unconstitutional ban on same-sex marriage. *Id.* at 501-02. For example, courts would consider, among other factors, "whether the parties held each other out as spouses," whether the parties "commingled their assets and finances," and whether the parties "made significant financial decisions together." *Id.* Jurisdictions recognizing common-law marriage apply similar factors to determine whether a couple is common-law married. In those states, the proponent of a common-law marriage generally must show: (1) "[present] intent and agreement . . . to be married by both parties; (2) continuous cohabitation; and (3) public declaration that the parties are husband and wife." *In re Marriage of Winegard*, 278 N.W.2d 505, 510 (Iowa 1979); *see also In re Estate of Hunsaker*, 968 P.2d 281, 285 (Mont. 1998) (listing similar elements). Because of the similarity between the tests, we conclude Richard is asking this court to craft a judicial exception to this state's ban on common-law marriage. *Cf. Charron*, 889 N.E.2d at 952-53 (Marshall, C.J., concurring) ("Granting such relief would create in effect a common-law or de facto quasi marital status that would promote litigation, permit judges to select from among marital benefits to which quasi married couples might or might not be entitled, . . . and undercut the Legislature's role in defining the qualifications and characteristics of civil marriage." (footnote omitted)). Additionally, *In re Madrone* crafted a remedy to an unconstitutional statute, whereas here, Richard does not challenge the constitutionality of NRS 122.010, which prohibits common-law marriage. Whatever discretion this court has to fashion remedies in equity, Richard

SUPREME COURT
OF
NEVADA

(O) 1947A

10

has not shown that such equitable discretion authorizes this court to deviate from a statute absent a constitutional challenge.

This court is not blind to the fact of inequality today. But "[w]hen a statute is clear, unambiguous, not in conflict with other statues and is constitutional, the judicial branch may not refuse to enforce the statute on public policy grounds." *Beazer Homes Nev., Inc. v. Eighth Judicial Dist. Court*, 120 Nev. 575, 578 n.4, 97 P.3d 1132, 1134 n.4 (2004). Nor can we rewrite a statute because it may have an unfair application in certain circumstances. *See Holiday Ret. Corp. v. State, Div. of Indus. Relations*, 128 Nev. 150, 154, 274 P.3d 759, 761 (2012) ("It is the prerogative of the Legislature, not this court, to change or rewrite a statute.").

The "fair" result under the circumstances of this case is unclear. On the one hand, Richard could not marry Michael when he purportedly wanted to because of Nevada's unconstitutional ban on same-sex marriage. On the other hand, because of the ban, Michael had a reasonable belief that he was in fact not married to Richard prior to the 2008 marriage. And if Michael wanted the property he acquired before 2008 to be community property, he could have given his separate property to the community as a gift. *Cf. Schmanski v. Schmanski*, 115 Nev. 247, 250, 984 P.2d 752, 755 (1999) (recognizing that separate property may be given as a gift to the community). Michael did not do so.

If this case concerned common-law or judicially created doctrines, rather than statutory law, we might have more leeway to fashion a remedy. The cases Richard cites support this prospect. For example, in *Mueller v. Tepler*, 95 A.3d 1011 (Conn. 2014), the Supreme Court of Connecticut expanded the common-law tort for loss of consortium to same-sex couples who at the time of the injury could not legally marry. 95 A.3d

at 1030. In doing so, the court emphasized it was altering a "judicially created right," which the court was free to reshape. *Id.* at 1029 (emphasis omitted). The court suggested it may have taken a different position had there been a statute on point by observing that "in determining whether we should expand a common-law action, we are not constrained by any considerations of the constitutional separation of powers or respect for the authority of a coordinate branch of government, as we would be when determining whether a plaintiff is retroactively entitled to a statutory benefit." *Id.* at 1030.

Likewise, in *Ramey v. Sutton*, 362 P.3d 217, 218-21 (Okla. 2015), the Oklahoma Supreme Court extended equitable standing to a same-sex partner seeking custody and visitation of a child who was the product of a long-term, same-sex relationship that began before same-sex couples had the right to marry. In doing so, it relied on a judicially created concept that provides "when persons assume the status and obligations of a parent without formal adoption they stand *in loco parentis* to the child and, as such, may be awarded custody even against the biological parent." *Id.* at 221. These authorities show that courts have exercised their discretion to alter judicially made or common-law doctrines.[4]

---

[4]However, the Michigan Supreme Court recently held that extending its equitable parent doctrine, a judicially created doctrine similar to the one at issue in *Ramey*, to same-sex couples is mandatory, not discretionary. *Pueblo v. Haas*, ___ N.W.2d ___, ___ (Mich. July 24, 2023). The majority held that "as a matter of equity and constitutional law," they must extend the doctrine to same-sex couples who could not marry earlier because of the unconstitutional same-sex marriage ban. *Id.* at ___. The constitutional analysis is unclear, and the court noted that failing to extend the doctrine would perpetuate inequalities identified in *Obergefell*. *Id.* at ___. While that may be true, that does not explain how *Obergefell* requires a court to

In sum, Richard's call to adopt a factor-based test to determine whether, but for Nevada's unconstitutional ban on same-sex marriage, he would have married Michael in 1991 or 1992 is a request to craft an equitable remedy that plainly contradicts NRS 122.010(2), the ban on common-law marriage. Richard fails to demonstrate that this court has equitable authority to deviate from a statute absent a constitutional challenge. Thus, the district court did not err in refusing to backdate the marriage to either 1991 or 1992.[5]

---

create a marriage if a proponent can show but for the ban they would have married. As a result, we agree with the dissent in *Pueblo* that "the majority actually *extends Obergefell* to, in turn, extend the equitable-parent doctrine, and it does so without adequately explaining why this extension is constitutionally required." *Id.* at ___ (Zahra, J., dissenting).

[5]Richard also cites to two federal district court cases certifying class action lawsuits in support of backdating. In one case, same-sex partners married when it became legal, but one partner died before the marriage lasted nine months. *Ely v. Saul*, 572 F. Supp. 3d 751, 759-60 (D. Ariz. 2020). Because the marriage lasted less than nine months, the surviving spouses did not qualify for benefits under a Social Security Act provision. *Id.* The surviving spouses challenged the nine-month duration requirement as unconstitutional. *Id.* at 761. The other case challenged a similar provision. *Thornton v. Comm'r Soc. Sec.*, 570 F. Supp. 3d 1010, 1018 (W.D. Wash. 2020). We find these cases distinguishable. These cases waived durational requirements for benefits but did not involve backdating marriages to a specific earlier date. Determining whether parties are eligible for a benefit involves reviewing that benefit, not judicially resolving that the parties were married at an earlier date. *Ely* and *Thornton* concluded that the claimants were eligible for benefits notwithstanding the durational requirement. They did not hold that the couples actually married earlier, which is precisely in dispute here. For instance, in *Thornton*, it was "undisputed" that the couple would have married earlier but for the unconstitutional ban. *Id.* Here, Michael disagrees that he and Richard would have married in 1991 or 1992.

SUPREME COURT
OF
NEVADA

(O) 1947A

13

## CONCLUSION

*Obergefell* applies retroactively so that Nevada courts must recognize same-sex marriages licensed and performed out of state before Nevada's ban on recognizing same-sex marriages was overturned. *Obergefell*, however, does not require this court to backdate a marriage before the couple solemnized their union. Although we recognize that *Obergefell* in and of itself did not remedy all of the vestiges of discrimination against same-sex couples, Nevada does not recognize common-law marriages, and we decline to craft a judicial exception to that ban. Therefore, we conclude that the effective date of a marriage will not predate the solemnized marriage itself for property division purposes in a divorce, even if a party asserts that the couple would have married earlier but for the later-held-to-be-unconstitutional ban on marriage between same-sex couples. Because the district court order accords with our holdings, we affirm.

_____, C.J.
Stiglich

We concur:

_____, J.
Cadish

_____, J.
Herndon

_____, J.
Parraguirre

_____, J.
Pickering

_____, J.
Lee

_____, J.
Bell

SUPREME COURT
OF
NEVADA



(O) 1947A

14